UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 07-CV-0187 (JFB) (JO)

———————————

M.V.B. COLLISION, INC., D/B/A MID ISLAND COLLISION,

Plaintiff,

VERSUS

ALLSTATE INSURANCE COMPANY,

Defendant.

———————————

MEMORANDUM AND ORDER
August 8, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff M.V.B. Collision, Inc., doing business as Mid Island Collision ("Mid Island" or "plaintiff") filed the instant action on January 12, 2007, asserting claims for (1) tortious interference with prospective business relations, (2) violation of the New York General Business Law § 349, (3) permanent injunctive relief,[1] and (4) a declaratory judgment against defendant Allstate Insurance Company ("Allstate" or "defendant"). Plaintiff seeks compensatory damages and a declaratory judgment.

Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss plaintiff's claim under New York General Business Law § 349 and plaintiff's claim for a declaratory judgment. Defendant does not seek to dismiss plaintiff's tortious interference claim. Oral argument was held on July 9, 2007. For the reasons set forth herein, defendant's motion is granted as to the declaratory judgment claim and denied as to the Section 349 claim.

I. BACKGROUND

The following facts are taken from the amended complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

———

[1] In plaintiff's opposition brief to the instant motion, it voluntarily dismissed, without prejudice, the permanent injunction claim, pursuant to Federal Rule of Civil Procedure 41(a). (Pl.'s Br., at 3 n.1.)

Plaintiff Mid Island is a premier auto collision repair shop located at 20 Lakeview Avenue, Rockville Centre, New York. (Compl. ¶ 8.) Mid Island repairs and reconstructs both ordinary vehicles, as well as high-end luxury and foreign automobiles. (*Id.* ¶ 13.) Mid Island is also one of a small number of collision shops nationwide that is Mercedes-Benz factory-trained and factory-tooled – that is, Mid Island's employees are actually trained on, and utilize, the same repair tools that are used at the Mercedes-Benz factories. (*Id.*) The owner and operator of Mid Island is Robert Jesberger ("Jesberger"), who has worked in the automobile repair business for over thirty-five years. (*Id.* ¶ 12.) Defendant Allstate provides auto collision insurance policies. Mid Island services Allstate policyholders involved in collisions ("First Party Customers"), pursuant to the Allstate collision coverage in their policies. (*Id.* ¶ 3.) In cases where Allstate is required to pay for the damage caused by its policyholders to third-party vehicles, Mid Island also services such third parties ("Third Party Customers"). (*Id.*) Allstate has set a labor rate of $38 to $42 per hour for auto collision services provided by Mid Island to First Party and Third Party Customers. (*Id.* ¶ 4.) Mid Island's labor rate for ordinary automobiles ranges from $55 to $65 per hour. (*Id.* ¶ 19.)

According to Mid Island, since Jersberger became the owner of Mid Island, Allstate has consistently pressured Mid Island to accept its lower labor rates and has refused to negotiate labor rates in good faith. (*Id.* ¶ 17.) Mid Island asserts that Allstate has employed – and continues to employ – a "take it or leave it" approach to negotiating labor rates. (*Id.*) Mid Island has refused to accept Allstate's lower rate. (*Id.* ¶ 3.) In 2003, in response to complaints from Allstate policyholders that Allstate would not approve Mid Island's labor rate, Mid Island began to testify on behalf of Allstate policyholders in first and third-party litigation in Nassau County. (*Id.* ¶ 19.) These lawsuits involved the policyholders' pursuit of costs associated with the difference between Allstate and Mid Island's labor rates. (*Id.*)

As an example of Allstate's alleged failure to negotiate labor rates, Mid Island contends that, in May 2005, Patrick Nash ("Nash"), an Allstate policyholder, brought his vehicle to Mid Island for repair. (*Id.* ¶ 23.) Bill Launders ("Launders"), an Allstate adjuster, inspected Nash's vehicle on May 19, 2005. (*Id.* ¶ 24.) After completing the inspection, Launders told Jesberger that Allstate would not negotiate a labor rate. (*Id.* ¶ 24.) Launders also stated that he had been given orders from Allstate management "not to negotiate [a] labor rate [with Mid Island] under any circumstances." (*Id.*)

Beginning in 2004, Allstate's "Downstate" team allegedly threatened Mid Island with economic harm and other repercussions if Mid Island continued to aid Allstate policyholders in litigation. (*Id.* ¶ 27.) On January 21, 2004, Allstate adjuster Todd Keith ("Keith") arrived at Mid Island and told Jersberger that "today is the day." (*Id.* ¶¶ 28-29.) Jersberger also heard Peter Martin ("Martin"), Allstate's Downstate Manager, instruct Keith to "teach him a lesson," allegedly referring to Jersberger. (*Id.* ¶ 31.) Keith then deemed a vehicle owned by an Allstate policyholder to be "totaled," thereby depriving Mid Island of the opportunity to repair the car. (*Id.* ¶ 28.) According to Mid Island, Keith had been directed by Allstate management to label a car as "totaled," regardless of its condition, prior to his arrival at Mid Island that day. (*Id.* ¶ 30.) Following this incident, Allstate adjusters "totaled"

2

several other "minimally damaged" automobiles. (*Id.* ¶ 32.) On one occasion, Allstate adjuster Steve Russo ("Russo") had given Mid Island an estimate for the repair of a vehicle. (*Id.* ¶ 33.) However, when Mid Island refused to accept the "take it or leave it" rate offered by Allstate, Martin instructed Russo to "total" the vehicle. (*Id.* ¶ 34.) Russo explained that it was "management's decision" to total the vehicle, and said that this would be the manner in which Allstate would deal with Mid Island going forward. (*Id.* ¶ 35.)

Plaintiff also alleges that Allstate "steered" its customers away from using Mid Island and towards shops chosen by the insurance company by advising its policyholders that, if they brought their cars to Mid Island for repair, the cars were "destined for a total." (*Id.* ¶ 36.) However, Allstate allegedly told its customers that, if the same cars were brought to an Allstate-approved repair shop, then Allstate would authorize the cars to be repaired. (*Id.*) In May 2005, a new Mid Island customer, Hope Di Fazio, informed Jesberger that she had been told by Allstate that she would be "involved in litigation" if her car were repaired at Mid Island. (*Id.* ¶ 39.) In September 2005, a long-time Mid Island customer, Annette Ercolano, told Jesberger that Allstate had pressured her not to bring her car to Mid Island because it was "overpriced" and "did not do good repair work." (*Id.* ¶ 40.) In April 2006, another Mid Island customer, Christopher Bailey ("Bailey"), spoke with Vincent Veshetta ("Veshetta") of Allstate. (*Id.* ¶ 41.) Veshetta told Bailey that Mid Island overcharged on its labor rates and that Allstate had experienced problems with the quality of Mid Island's work in the past. (*Id.*) In addition, on several occasions between 2004 and the present, Allstate allegedly threatened its policyholders with litigation if they used Mid Island as a repair shop. (*Id.* ¶ 43.)

In April 2005, Allstate placed an "observer," Gary Cromwell ("Cromwell") at Mid Island's facility, in order to "oversee" the interaction between Allstate, Mid Island and Allstate policyholders. (*Id.* ¶ 9.) When Mid Island objected to Cromwell's presence, Allstate informed Mid Island that it would not "sign off" on any work if Cromwell was not on the premises. (*Id.* ¶ 46.) According to Mid Island, Cromwell "harassed" Mid Island employees and customers with "incessant questions, comments, and interjections, and attempted on several occasions to bait Jesberger into a physical confrontation." (*Id.* ¶ 47.) Mid Island alleges that Cromwell's presence caused them to take two to three times longer to process claims. (*Id.*) According to Mid Island, Allstate required Cromwell's presence at its facility for six months – Cromwell was only removed after Mid Island notified Allstate's national headquarters about his presence. (*Id.* ¶ 48.)

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, – F.3d –, Nos. 05-CV-5768 (L), 05-CV-5844 (con), O5-CV-6379 (con), 05-CV-6352 (con), 05-CV-6386 (con), 05-CV-6358 (con), 05-CV-6388 (con), 2007 U.S. App. LEXIS 13911, at *36 (2d Cir. Jun. 14, 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts

3

consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (May 21, 2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974.

III. DISCUSSION

Allstate contends that Mid Island has failed to adequately plead claims for relief under New York General Business Law § 349, and under the Declaratory Judgment Act, 28 U.S.C. § 2201. For the reasons stated below, the Court grants defendant's motion to dismiss with regard to the Declaratory Judgment Act, and denies the motion with regard to Section 349.

A. New York General Business Law § 349

New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business" within New York State. The statute provides that any individual who has been injured under Section 349 may bring a private action in order to enjoin the alleged unlawful practice, as well as to recover actual damages or fifty dollars, whichever amount is greater. N.Y. Gen. Bus. Law § 349(h).

As the Second Circuit has recently reiterated, "[a] § 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. J.P. Morgan Chase & Co.*, – F.3d –, No. 06-CV-0409, slip op. at 27 (2d Cir. Aug. 6, 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

Likewise, the New York Court of Appeals has held that "section 349 is directed at wrongs against the consuming public. . . . Thus, as a threshold matter, plaintiffs claiming the benefit of section 349 – whether individuals or [other entities] – must charge conduct of the defendant that is consumer-oriented." *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *see also Vitolo v. Mentor H/S, Inc.*, No. 06-CV-1794, 213 Fed. Appx. 16, 1 (2d Cir. Jan. 3, 2007) (summary order) (citing *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)), *petition for cert. filed*, 75 U.S.L.W. 3623 (U.S. May 11, 2007) (No. 06-1506). Once a plaintiff has established that an act is consumer-oriented, the plaintiff must show that "defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744 (citations omitted). As explained *infra*, the Court finds that plaintiff has sufficiently pled both elements of a claim under Section 349.

1. Consumer-Oriented

Construing the facts most favorably to plaintiff, Mid Island has set forth a plausible claim that Allstate's acts are "consumer-oriented" within the meaning of New York General Business Law § 349. Courts have held that claims meet the consumer-orientation requirement of the statute if "some harm to the public at large is at issue." *Consol. Risk Servs. v. Auto. Dealers WC Self Ins. Trust*, No. 06-CV-0871 (FJS/RFT), 2007 U.S. Dist. LEXIS 22097, at *25 (N.D.N.Y. Mar. 27, 2007) (quoting *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 179 (W.D.N.Y. 2003) (stating that the central issue is whether the practice affects the public

4

interest, not whether the suit was brought by a consumer or a competitor)) (internal quotation marks omitted). Accordingly, "'[p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" *N. Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (quoting *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744); *accord DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002). However, the plaintiff need not establish that the defendant engaged in recurring conduct with respect to either a single customer or multiple consumers; rather, the plaintiff must demonstrate that the acts or practices complained of "have a broader impact on consumers at large." *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744.

The conduct alleged by plaintiff in this case relates to a number of policyholders who either are, or potentially could be, Mid Island customers, all of whom are subject to Allstate's standard form insurance policy. Therefore, this dispute is not "limited to a challenge regarding coverage made on the basis of facts unique to [a single insured], but relate to consumer-oriented conduct affecting the public at large." *Shebar v. Metro. Life Ins.*, 807 N.Y.S.2d 448, 449 (N.Y. App. Div. 2006) (citations omitted). Where, as here, a defendant enters into "contractual relationship[s] with customers nationwide" via a standard form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior affects the public generally and therefore satisfies the requirement of "consumer-oriented" conduct within the meaning of Section 349. *Dekel v. Unum Provident Corp.*, No. 04-CV-0413 (DLI) (ETB), 2007 U.S. Dist. LEXIS 17819, at *7 (E.D.N.Y. Mar. 14, 2007) (citing *Binder v. Nat'l Life of Vt.*, No. 02-CV-6411 (GEL), 2003 U.S. Dist. LEXIS 8431, at *17 (S.D.N.Y. May 20, 2003) (holding that denial of claims with regard to a standard form insurance policy, "if indicative of a larger practice, will potentially affect the many consumers who hold the same type of policy")); *see, e.g., Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (holding Section 349 applicable to insurers where plaintiffs demonstrated that similar practices had been employed by defendant against multiple insureds); *Joannou v. Blue Ridge Ins. Co.*, 735 N.Y.S.2d 786, 786 (N.Y. App. Div. 2001) ("An insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349.") (citations omitted); *cf. N.Y. Univ.*, 662 N.E.2d at 770 (declining to find Section 349 violation where insurance policy had been negotiated and was "tailored" to meet the needs of the plaintiff, a large private university); *but see Perfect Dental, PLLC v. State Farm Mutual Automobile Ins. Co.*, Nos. 04-CV-0586, 04-CV-0588 (DLI), 2006 U.S. Dist. LEXIS 62226, at *7 (E.D.N.Y. Aug. 31, 2006) ("Courts almost uniformly find that disputes between policy holders and insurance companies concerning the scope of coverage 'are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349.'") (quoting *Depasquale*, 179 F. Supp. 2d at 62) (additional citations omitted). Moreover, contrary to defendant's assertions, the fact that plaintiff Mid Island is a business – not an individual consumer – and stands to lose potential revenue as a result of defendant's challenged conduct does not undermine its ability to bring a claim pursuant to Section 349. *See, e.g., Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 294

(S.D.N.Y. 1996) (holding that, where plaintiff healthcare provider alleged that defendant insurer had failed to timely and fully reimburse plaintiff for medical services rendered, "although [the insurer's] deceptive acts allegedly impede plaintiffs' ability to earn a living, they may also affect the public interest"). Accordingly, the Court declines to dismiss plaintiff's Section 349 claim pursuant to the consumer-orientation prong of the statute.

2. Deceptive or Misleading Practice

The Court also finds that Mid Island has set forth a plausible claim that Allstate's acts were deceptive or misleading. The New York Court of Appeals has held that, under Section 349, deceptive acts and practices encompass those representations or omissions "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 744; *accord Stutman*, 731 N.E.2d at 611-12. However, a deceptive practice "need not reach the level of common-law fraud to be actionable under section 349," and reliance is not an element of a Section 349 claim. *Stutman*, 731 N.E.2d at 612 (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999); *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999) ("Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim."); *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744 ("[T]he statute does not require proof of justifiable reliance.")).

As a threshold matter, Mid Island contends that Allstate has violated New York State insurance regulations as a result of its alleged conduct in the instant case. As an insurance company, Allstate is required to comply with the New York State insurance regulations as set forth in 11 N.Y.C.R.R. § 216.7, which governs "Unfair Claims Settlement Practices and Claim Cost Control Measures." Regulation 64 provides guidelines for the negotiation of repair rates between insurance companies, insureds, and "designated representative[s]" (the "insured's intended repair shop[s]"). 11 N.Y.C.R.R. §§ 216.7(a)(2), (b)(7). According to plaintiff, Allstate has repeatedly violated those portions of Regulation 64 which mandate that "[n]egotiations must be conducted in good faith" and that "a good faith offer of settlement, sufficient to repair the vehicle to its condition immediately prior to the loss, shall be made." 11 N.Y.C.R.R. §§ 216.7(b)(7), (b)(1). The parties each identify a number of cases in support of their position that Allstate either is or is not in violation of Regulation 64 when it declines to negotiate with a repair shop as to the appropriate labor rate.[2] However, such determinations must be

---

[2] Plaintiff offers case law indicating that offering a flat labor rate to all insureds – rather than engaging in negotiations to reach an agreed-upon repair rate – violates both the word and spirit of Regulation 64. In *Dorfler v. Cummings*, Index No. SC 195/03 (Nassau Cty. Dist. Ct. Jul. 18, 2003), Judge Sondra K. Pardes held that, where Allstate refused to pay Mid Island an amount greater than $38.00 per hour, the company had violated Regulation 64. Based upon the testimony of an Allstate adjuster that other shops accepted the $38.00 rate and that "$38.00 is what Allstate pays," the Court concluded that "there was no good faith negotiation designed to arrive at an 'agreed price.'" *Dorfler*, at 3. The court concluded that:

> Allstate's "take it or leave it" posture placed plaintiff in the position of paying the difference between Mid Island's bill and the Allstate's payment or conceding

6

to use a shop that would accept Allstate's labor rate. This is exactly the circumstance that Insurance Law § 2610 was designed to protect against.

*Dorfler*, at 3. Similarly, the New York Appellate Division concluded in *Rizzo v. Merchants and Businessmen's Mutual Ins. Co.*, 727 N.Y.S.2d 250 (N.Y. App. Div. 2001), that where an insurance claims adjuster created an estimate based upon a $28.00 per hour labor charge, and plaintiff sought repair of her vehicle at a repair shop that charged $50.00 per hour, the insurance company's refusal to pay the difference in price constituted a violation of Regulation 64. As in this case, the defendants in *Rizzo* took the position that "the only reasonable interpretation of [Regulation 64] is that . . . [plaintiff's] options were to either use the repair shop recommended by defendant or use her own repair shop and pay the difference between the defendant's estimate and the cost of repairs at said shop." *Rizzo*, 727 N.Y.S.2d at 251. However, the Appellate Division rejected that interpretation, holding that "[d]efendant's position, which in effect would limit the insured's recovery of benefits to the insurer's estimate of repairs, represents precisely the type of 'steering' tactics that the Insurance Law and regulations were designed to proscribe." *Id.* at 252; *see also Gapud v. Kaur*, 836 N.Y.S.2d 499 (Nassau Cty. Dist. Ct. Mar. 20, 2007) (rejecting insurance company's contention that it should not have to pay costs exceeding the company's repair estimate); *Mass v. Melymont*, 781 N.Y.S.2d 625 (Nassau Cty. Dist. Ct. Dec. 23, 2003) (concluding that labor rates charged by plaintiff's chosen repair shop, which exceeded insurer's estimate, were fair and reasonable). Under *Rizzo*, it is not the case that "an insured is automatically entitled to be reimbursed for the full amount charged by the repair shop authorized by the insured to make the repairs"; rather, where "the parties cannot reach an agreed price, the insured bears the burden of establishing the reasonable cost of the repairs necessary to bring the vehicle to its condition prior to the loss." *Rizzo*, 727 N.Y.S.2d at 252; *see also Gapud*, 836 N.Y.S.2d at 499; *Mass*, 781 N.Y.S.2d

made on a case-by-case basis, and must address each case's specific factual circumstances.

Allstate argues that, notwithstanding this dispute, any purported violation of Regulation 64 based on the alleged failure to negotiate labor rates cannot, in and of itself, satisfy the "deceptive and misleading practices" element of Section 349 and,

---

at 625. Notwithstanding the Appellate Division's rejection of defendant's position in *Rizzo*, Allstate contends that, as a blanket matter, "[i]f an insured elects to have his or her physical damage repaired by a facility other than the facility recommended by the insurer, the insurer is not financially responsible for any excess repair cost over the cost the recommended facility would have charged had it performed the physical damage repair itself." (Def.'s Br., at 4-5 (quoting Hahn Decl., Ex. D, Letter from State of New York Insurance Department to Stephen L. Ihm, Esq., Allstate Regional Counsel, dated April 16, 2002).) However, New York case law overwhelmingly weighs against defendant's argument, and in favor of a case-by-case analysis of whether the insurance company should be liable for the difference in costs between the recommended repair shop and the shop chosen by the insured. In fact, even in one of the cases cited by defendant, where the insurance company was held not liable for the repair cost disparity, the court acknowledged that the plaintiffs had failed to meet their burden "to rebut the assertion that the defendant could have the vehicles repaired for the price it estimated," indicating that the court had not applied a blanket rule, but instead relied, at least in part, on the burden of proof requirement set forth in *Rizzo*. *Nedelka v. Allstate Ins. Co.*, Index Nos. SC 714/02, SC 715/02, SC 717/02 (Nassau Cty. Dist. Ct. Mar. 31, 2004). In the second case cited by defendant, *Malito v. Allstate*, Index No. SC 00041/05 (Nassau Cty. Dist. Ct. Sept. 14, 2005), the court did not address the burden of proof issue.

7

therefore, this claim must be dismissed. However, at least one New York court, construing the good-faith negotiation requirement of Regulation 64, has suggested, in *dicta*, that "a comparatively low estimate of collision-caused damages may, in some instances, lend support to a finding of fraudulent and deceptive practices." *Allstate Ins. Co. v. Foschio*, 462 N.Y.S.2d 44, 47 (N.Y. App. Div. 1983) (citations omitted); *but see Dekel*, 2007 U.S. Dist. LEXIS 17819, at *6 ("[A]n insurance company violates [N.Y. Gen. Bus. Law] § 349 by selling policies that it never intends to honor, which is not what happened in this case.") (citing *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2002)). Similarly, in another case, the New York Appellate Division held – without reference to Regulation 64 – that where an insurer engages in a scheme "to force . . . insureds into using Allstate-affiliated contractors by means of misrepresentations, threats, and various retaliatory measures," such behavior is "indicative of the deceptive practices that General Business Law § 349 was designed to prevent." *Scavo v. Allstate Ins. Co.*, 657 N.Y.S.2d 193, 194-95 (N.Y. App. Div. 1997) (declining to dismiss Section 349 claim against fire insurer) (citing *Riordan*, 977 F.2d at 52-53; *Sulner v. Gen. Accident Fire & Life Assur. Corp.*, 471 N.Y.S.2d 794, 796 (N.Y. Sup. Ct. 1984)); *see also Pack Bros. Body Shop, Inc. v. Nationwide Mut. Ins. Co.*, No. 01-CVS-805, 2003 NCBC LEXIS 2 (N.C. Superior Ct. Jan. 10, 2003) (declining to award summary judgment under state statute prohibiting "deceptive acts or practices affecting commerce" where defendant insurer prevented its customers from seeking repairs from plaintiff auto body shop).

In the instant case, for purposes of this motion to dismiss, the Court need not address whether a failure to negotiate labor rates under Regulation 64, by itself, could satisfy the "deceptive and misleading practices" requirement of Section 349 because the complaint alleges conduct far beyond that in scope. Specifically, plaintiff contends that Allstate engaged in the following deceptive and misleading practices: (1) steering its policyholders from Mid Island to "inferior" repair shops, in violation of New York State insurance regulations, in order to save money; (2) retaliating against Mid Island for its refusal to accept Allstate's labor rates; (3) leading its policyholders to believe that they would be sued if they allowed their automobiles to be repaired by Mid Island; and (4) defaming Mid Island in order to ensure that its policyholders took their vehicles to other repair shops. (Pl.'s Br., at 10.) In other words, plaintiff alleges that Allstate engaged in fraudulent and misleading practices by, among other things, threatening and misrepresenting facts to its policyholders in order to steer them away from Mid Island. Those allegations are sufficient to establish a plausible claim under Section 349 and to survive a motion to dismiss.

In sum, because plaintiff alleges threats, misrepresentations and retaliatory behavior on the part of Allstate to "steer" Mid Island's customers away, the Court declines to find, at this early stage of the litigation, that plaintiff cannot sustain a "plausible" claim under Section 349. Therefore, defendant's motion to dismiss this claim is denied.

B. Declaratory Relief

Defendant Allstate also seeks to dismiss Mid Island's claim for a declaratory judgment stating that "between $80-$95 per hour is a fair and reasonable labor rate for High End Automobiles and $65 per hour is a fair and reasonable labor rate for Ordinary Automobiles," or, alternatively, that "the $42 labor rate 'imposed' by Allstate is unreasonable." (Compl. ¶ 64; Pl.'s Br., at 12.) For the reasons set forth below, the Court finds that plaintiff has failed to set forth a plausible claim for declaratory relief.

1. Legal Standard

Pursuant to the Declaratory Judgment Act, Section 2201 of Title 28,

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The party seeking a declaratory judgment bears the burden of demonstrating that the district court has jurisdiction – that is, that there is an "actual controversy," defined as one that is "'real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)) (additional citations omitted); *see also U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) ("A court cannot adjudicate conjectural or hypothetical cases or controversies. A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Dawson v. Dep't of Transp.*, 480 F. Supp. 351, 352 (W.D. Okla. 1979)). "The standard for ripeness in a declaratory judgment action is that 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 313 U.S. 270, 273 (1941)); *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) (same) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). The issue of whether an actual, immediate controversy exists must be determined on a case-by-case basis. *Kidder, Peabody & Co., Inc.*, 925 F.2d at 562.

Once a lawsuit has met the "actual case or controversy" requirement, district courts must consider five factors, set forth by the Second Circuit in *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003), in reviewing declaratory judgment actions: (1) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to *res judicata*'"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the

domain of a state or foreign court"; and (5) "whether there is a better or more effective remedy." *See also Boeing Co. v. Egyptair*, No. 05-CV-5986, 2007 U.S. App. LEXIS 10801, at *8-*9 (2d Cir. May 7, 2007) (summary order) (applying the five *Dow Jones* factors); *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (same). However, "[t]he decision to grant declaratory relief rests in the sound discretion of the district court." *Lijoi v. Continental Cas. Co.*, 414 F. Supp. 2d 228, 247 (E.D.N.Y. 2006) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) ("We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.")); *see also N.Y. Times Co.*, 459 F.3d at 165 ("The [Declaratory Judgment] Act does not require the courts to issue a declaratory judgment. Rather, it 'confers a discretion on the courts rather than an absolute right upon the litigant.'") (quoting *Wilton*, 515 U.S. at 287) (some internal quotation marks and internal citation omitted).

### 2. "Actual Case or Controversy" Requirement

As a threshold matter, the Court finds that the instant lawsuit does not present an "actual case or controversy" that is ripe for adjudication before this Court by means of a declaratory judgment. While the Court does not deny the existence of a valid conflict between the two parties as it relates to the claims in this case, it nevertheless finds that the broad determination of "fair and reasonable" car repair labor rates is not an appropriate dispute for resolution by declaratory judgment.

Several courts have acknowledged the difficulty of line-drawing between those cases in which a controversy is of a hypothetical or speculative nature, and those that present issues of "sufficient immediacy and reality" to warrant declaratory relief. *Duane Reade, Inc.*, 411 F.3d at 388. For instance, in *Reichhold Chemicals, Inc. v. Travelers Ins. Co.*, 544 F. Supp. 645, 650 (E.D. Mich. 1982), the court considered the complexity of this issue at length:

> This distinction . . . between a controversy "appropriate for a judicial determination" and "a difference or dispute of a hypothetical or abstract character" is state with much greater ease than it is applied in a specific case. The difference between an abstract question and a controversy contemplated by the Declaratory Judgment Act is necessarily one of degree and, as such, it is extremely difficult to fashion a precise test for determining the existence, or non-existence, of an actual controversy in every fact situation. Basically, the question to be resolved in each case is whether the allegations reflect the existence of a substantial controversy of a sufficient immediacy and reality between the parties having adverse legal interests to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270 (1941).

In the instant case, the broad and imprecise nature of the remedy requested – namely, a blanket determination of "fair and reasonable" car repair rates on an ongoing basis – reflects the hypothetical nature of the controversy between the parties on this issue that cannot be addressed through declaratory relief. The

plaintiff seeks a declaration that a particular range of labor rates is "fair and reasonable" with regard to two undefined groups of "High End Automobiles" and "Ordinary Automobiles" regarding which no information has been – or possibly could be – placed before the Court without a lengthy and exhaustive factual analysis on a case-by-case basis. The Court is not in a position to determine which vehicles should be classified as "High End" or "Ordinary." Nor is the Court able to determine under which circumstances a labor rate of $42, $65, $80, $85 or $90 per hour is or is not appropriate. Moreover, this Court refuses to supplant the good faith negotiations contemplated by Regulation 64 with its own judgment as to fair and reasonable repair labor rates. The "fair and appropriate" labor rate will inevitably vary with market conditions, the make, model, age and condition of the individual car being serviced, and the nature of the specific repairs to be performed.³ Thus, for this Court to determine that car repair labor rates are *a priori* "fair and reasonable" would be to administer the law based upon a hypothetical set of facts, which is exactly the type of conjecture that is prohibited by the Declaratory Judgment Act.⁴ *See E.R. Squibb & Sons, Inc.*, 241 F.3d at 177 (quoting *Olin Corp.*, 5 F.3d at 17).

(b) *Dow Jones* Factors

Even if this Court were to find that plaintiff's request for a declaratory judgment holding Mid Island's rates to be fair and reasonable constituted an "actual case or controversy" within the meaning of the Declaratory Judgment Act, the Court also declines to grant declaratory relief on the basis of the five *Dow Jones* factors.

First, issuance of the requested declaratory relief would not "serve a useful purpose in clarifying or settling the legal issues involved" in the dispute between Mid Island and Allstate, as questions would remain as to the appropriate labor rate in the case of each individual customer. *Dow Jones & Co, Inc.*, 346 F.3d at 359. Even a blanket statement that Allstate's current labor rate is not fair and reasonable, or an assertion that the labor rate ranges proposed by Mid Island are, in fact, fair and reasonable, would not curtail the inevitable conflict that would arise with regard to the determination of which vehicles and which repairs at a particular point in time were eligible for the labor rates deemed to be acceptable by the Court.

---

³ Similarly, in determining attorneys' fees, for instance, federal courts do not decide a presumptively reasonable amount; rather, a court must determine, in each individual case, what a "reasonable, paying client would be willing to pay," taking into account "the complexity and difficulty of the case, the available expertise . . ., the resources required to prosecute the case effectively . . ., the timing demands of the case" and other factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, – F.3d –, No. 06-CV-0086, 2007 U.S. App. LEXIS 16583, at *3-*4 (2d Cir. Jul. 12, 2007) ("We think the better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.") (emphasis in original).

⁴ Furthermore, a declaratory judgment from this Court setting appropriate car repair labor rates would inevitably spur a flood of litigation from a variety of businesses and individuals seeking approval and indefinite monitoring by the federal courts of appropriate prices.

11

For the same reasons, the second *Dow Jones* factor, "whether a judgment would finalize the controversy and offer relief from uncertainty" weighs against declaratory relief. *Dow Jones & Co, Inc.*, 346 F.3d at 359. Moreover, such a judgment would provide a temporary solution at best. For instance, if labor costs were to increase, Mid Island would seek an alteration of the judgment to a higher price per hour; alternatively, if demand for Mid Island's services were to fall, the plaintiff would seek modification of the declaratory judgment to approve *lower* labor rates. In this case, the prospect of finality would be an elusive and impossible goal, as the parties would repeatedly have to return to court to request adjustments of the court's judgment based upon fluctuating market conditions and Mid Island's individual circumstances.

Third, while plaintiff's motives in seeking declaratory relief are likely to be broad in scope, it is clear that they seek, at least in part, a "race to *res judicata*." *Dow Jones & Co, Inc.*, 346 F.3d at 359. Plaintiff avers that it participates in a number of lawsuits between Allstate insureds and defendant, and it is certainly conceivable that it would use a declaratory judgment from this Court to assist litigants in other cases who seek reimbursement of the difference between Allstate's insurance payouts and their repair bills from Mid Island.

Fourth, the Court finds that issuance of a declaratory judgment in this instance would "improperly encroach on the domain" of the New York State courts. *Dow Jones & Co, Inc.*, 346 F.3d at 359-60. The state courts generally have jurisdiction over disputes between insureds and Allstate regarding the labor rates covered by their policies. In these cases, where "the parties cannot reach an agreed price, the insured bears the burden of establishing the reasonable cost of the repairs necessary to bring the vehicle to its condition prior to the loss," under New York law. *Rizzo*, 727 N.Y.S.2d at 252. There is no reason to exempt patrons of this particular auto shop from New York's standard of proof requirements. For this Court to determine the appropriate labor rate in all cases involving Mid Island would be to trample upon the state court's right to evaluate the evidence and determine whether, in each individual case, the insured has met his burden of demonstrating that the costs incurred for the repair of his vehicle are reasonable.

Fifth, it appears that there is a "better or more effective" way for this Court to settle the disputes between Mid Island and Allstate over labor rates than by issuing a declaratory judgment because, as this Court has explained at length *supra*, the question of fair and reasonable labor rates is necessarily fact-driven and market-driven. *Dow Jones & Co, Inc.*, 346 F.3d at 360. Therefore, the better and more effective course to address the instant conflict is simply for each individual policyholder to negotiate with Allstate regarding coverage of Mid Island's services, and, if necessary, to initiate litigation to recover the difference between Allstate's insurance payment and the actual cost of repairing the vehicle.

In sum, although there are claims in this case that survive the motion to dismiss, it is not the proper role of a federal court to set "fair and reasonable" car repair rates in a blanket fashion on an ongoing basis in the form of declaratory relief, without regard to particular disputes between parties involving specific vehicles at a particular point in time. Such an act by this Court would violate the "actual case or controversy" requirement and would not satisfy the *Dow Jones* factors.

Accordingly, the declaratory judgment claim must be dismissed as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED with regard to plaintiff's Section 349 claim and GRANTED with regard to plaintiff's claim for declaratory relief.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 8, 2007
Central Islip, New York

\* \* \*

The attorneys for the plaintiff are Michael Benjamin Roth, Esq., and Shephard Lane, Esq., Dreier LLP, 400 Park Avenue, New York, New York 10022. The attorneys for the defendant are Andrew T. Hahn, Sr., Esq., and James S. Yu, Esq., Seyfarth Shaw LLP, 1270 Avenue of the Americas, Suite 2500, New York, New York 10020.