# SEYFARTH SHAW LLP
ATTORNEYS

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
212-218-5554

Writer's e-mail
Ahahn@seyfarth.com

January 6, 2010

**VIA ECF AND FEDERAL EXPRESS**
Hon. Joseph F. Bianco, U.S.D.J.
United States District Court for the Eastern District of New York
United States Courthouse
225 Cadman Plaza
Brooklyn, New York 11201

    Re:    ***M.V.B. Collision, Inc. v. Allstate Ins. Co., Civ. EDNY, No. 07-187 (JFB)(MLO)***

Dear Judge Bianco:

    On behalf of defendant Allstate Insurance Company ("Allstate"), we write to request a pre-motion conference with respect to Allstate's anticipated motion to strike the report and testimony of Mid Island's expert, Dr. Frederic B. Jennings, Jr. (the "Motion to Strike"). As set forth in our accompanying letter dated January 6, 2010, Allstate intends to file the Motion to Strike in conjunction with its anticipated motion for summary judgment, pursuant to Fed. R. Civ. P. 56, to dismiss the remaining claims asserted by plaintiff M.V.B. Collision, Inc. ("Mid Island").

    On June 28, 2009, in support of Mid Island's damages calculations pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii) and Allstate's discovery requests, Dr. Jennings, an economist, submitted a report (the "Jennings Report"), which calculates the alleged damages sustained by Mid Island ranging from: (i) $282,000 to $807,000 from Allstate's so-called "steering" of customers; (ii) from $3,500,000 to $4,700,000 from alleged labor rate suppression; and (iii) $733,000 to $2,800,000 from alleged labor rate suppression on jobs allegedly "steered" from Mid Island. These purported damage numbers are incredibly speculative, and based on unreliable data and methods, and, therefore, this Court should exercise its role as a "gate-keeper" to strike the Jennings's Report. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert evidence must establish admissibility under Rule 104(a) of the Federal

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA



Rules of Evidence by a preponderance of the proof. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). Indeed, where the proposed expert testimony lacks an adequate factual basis or is based merely on guesswork or speculation, as opposed to scientific, technical, or other specialized knowledge, the testimony should be excluded as unreliable. *See, e.g., MLB Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253-54 (2d Cir. 2005) (granting defendant's summary judgment motion, district court properly excluded expert's opinion as insufficiently unreliable to support general causation). Moreover, courts have routinely held that proffered evidence in an expert's report may be excluded from consideration when passing upon a motion for summary judgment. *See, e.g., Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 183 (E.D.N.Y. 2001) ("The opinion which [plaintiff's expert] would express rests upon unsubstantiated generalizations, speculative hypotheses and subjective evaluation that are based neither upon any professional study or experience-based observation."); *Lamela v. City of New York*, 560 F. Supp. 2d 214, 224-25 (E.D.N.Y. 2008), *aff'd*, 332 Fed. Appx. 682 (2d Cir. 2009).

Mid Island cannot meet its burden of establishing the admissibility of the Jennings Report. Rather than relying upon or providing evidence of actual illegal "steering," Dr. Jennings devised a novel, abstract theory that creates alleged "steering" based on Allstate's share of direct premiums written for total private passenger auto insurance in New York State (*i.e.*, Allstate's "market share") and Mid Island's revenues from the insurers (the "M/R ratios" model). While the M/R ratios model is difficult for a layperson to comprehend in order to assist the trier of fact, it appears that Dr. Jennings postulates that, but for any steering, Mid Island's share of Allstate-related insurance revenues would equal Allstate's market share for the entire State of New York. Dr. Jennings then estimates damages by calculating how much additional Allstate-related revenue Mid Island would have to earn in each year to make its Allstate-related revenue share equal to Allstate's "market share" in New York State. With regard to labor rate suppression, Dr. Jennings estimates damages by assuming that "but for" alleged rate suppression, Allstate would have paid an auto body repair ("ABR") labor rate equal to the labor rate for auto mechanical repairs ("AMR"), which by his estimate, means that Allstate would have paid a rate that was more than twice as high as the average rate that Allstate actually paid and sometimes more than thirty dollars an hour greater than Mid Island requested to be reimbursed.

As he readily confirmed in his deposition testimony, Dr. Jennings' damage models are unsupported by any recognized economic theory, and thus lack sufficient data and reliability under *Daubert/Kumho* and FRE 702. His analysis and conclusions are not only highly abstract and untested, but are also based on assumptions that are flawed and not reflective of the real world situation involving the collision repair of vehicles, nor are they based upon any actual evidence of wrongdoing. To highlight some specific examples of the fatal flaws in the Jennings Report:

- Dr. Jennings fails to distinguish the impact of lawful conduct from allegedly unlawful conduct in determining damages for steering. Specifically, Dr. Jennings fails to account for allowable recommendations under New York's Regulation 64, and completely ignores the January 2009 report of the New York State Insurance Department, which investigated allegations of illegal steering in the State and concluded that systematic steering in the State did not occur. Allstate was part of that investigation.

- There is no basis for Dr. Jennings' assumption that Mid Island's customers should be evenly distributed across insurance companies. There is no economic rationale to assume that an insurance


company's share of direct premiums would equal the proportion of repair business accounted for by that company's insureds at any given repair shop. This theory is not only untested and demonstrably wrong, but also does not take into account a myriad of factors that may account for deviations, such as market location, brand reputation, proximity of the repair shop to the insureds' homes, the body shop capacity to repair additional cars, just to name a few examples.

- There is no basis that ABR labor rates are comparable to AMR labor rates from an auto collision repair industry standpoint for a number of reasons. In that regard, "apples are being compared to oranges." For example, ABR rates are market driven, developed by what other competitive collision repairers are willing to accept to repair a damaged car. Auto mechanical repairs also generally require more specialized training and certifications, and are often performed by dealerships, which command a higher labor rate for the required mechanical repair expertise. Indeed, Dr. Jennings's admits that AMR labor rates are always higher than ABR labor rates across the country. He also testified that he has no expertise in AMR.

- Dr. Jennings' use of AMR labor rates (which, according to Dr. Jennings averages between $84.34 to $99.97 per hour) as the benchmark is also completely arbitrary and unreliable. Specifically, he bases his but-for labor rates on two surveys of mechanical labor rates in New York, one in 2002, which included five repair shops on Long Island, and one in 2004, which included four shops. Nassau County alone has approximately 250 body shops. Dr. Jennings's admits that he is unsure about the background of these nine surveys and has not produced any information related to these surveys. Moreover, these surveys are uncorroborated and appear to show the posted rates and not the average rates paid by those companies. Furthermore, Jennings' reliance on two extremely small, potentially non-random surveys to predict but-for ABR rates is not consistent with standard and acceptable economic practice.

- Dr. Jennings' reliance upon AMR rates as the benchmark also does not account for competitive response from other auto body shops willing to do the same work for a much lower rate. It is also not consistent with the labor rates that Mid Island itself has sought from Allstate to repair a vehicle ($65 per hour), or what Mid Island has agreed to with other insurance companies, including Travelers which entered into a concierge program agreement with Mid Island (at approximately $48 per hour in 2006), pursuant to which Mid Island enjoys referrals of Travelers' insureds. Furthermore, Dr. Jennings does not take into account that increasing the ABR labor rate will inevitably lead to more total losses of vehicles that could otherwise be repaired at a lower labor rate, resulting in fewer cars for Mid Island to repair.

The foregoing are just a few, amongst many examples of the flaws contained in the Jennings Report and his testimony. In sum, Dr. Jennings' methodologies are confusing, contain multiple fatally deficient errors, have never been used before in the auto collision industry, and appear to be fashioned solely for purposes of this and another arguably related litigation. As such, the Jennings Report fails to meet the standard for admissibility of expert testimony pursuant to *Daubert/Kumho* and FRE 702.

Allstate respectfully requests that the Court schedule a pre-motion conference in connection with Allstate's intended motion. Thank you for Your Honor's consideration of this request.

**SEYFARTH SHAW** LLP
ATTORNEYS

Hon. Joseph F. Bianco, U.S.D.J.
Page 4

Respectfully submitted,

SEYFARTH SHAW LLP

Andrew T. Hahn, Sr.

cc:   Steven F. Goldstein, Esq. (via ECF and e-mail)