UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
M.V.B. COLLISION, INC. d/b/a :
MID ISLAND COLLISION, :
: **ECF CASE**
       Plaintiff, :
: CV 07 187 (JFB) (MLO)
   vs. :
:
ALLSTATE INSURANCE COMPANY, :
:
       Defendant. :
:
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT ALLSTATE INSURANCE COMPANY'S
MOTION TO STRIKE PORTIONS OF PLAINTIFF'S
<u>AFFIDAVITS AND RULE 56.1 COUNTERSTATEMENT</u>**

Dated: New York, New York
       June 16, 2010

**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendant Allstate Insurance Company

## **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    MID ISLAND'S COUNTERSTATEMENTS MUST BE STRICKEN...................2

        A.    Mid Island's General Objections..................................................................2

        B.    Mid Island's Specific Objections .................................................................4

        C.    Mid Island's Statements ...............................................................................8

    II.    MID ISLAND'S AFFIDAVITS MUST BE STRICKEN. ........................................9

CONCLUSION ..............................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Deutsche Asset Mgt., Inc. v. Callaghan,*
  No. 01 Civ. 4426 CBM, 2004 WL 758303 (S.D.N.Y. Apr. 7, 2004) .......................................9

*Holtz v. Rockefeller & Co.,*
  258 F.3d 62 (2d Cir. 2001) ......................................................................................................4

*Smith v. Pathmark Stores, Inc.,*
  485 F. Supp. 2d 235 (E.D.N.Y. 2007) .....................................................................................8

*U.S. Info Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3,*
  No. 00 Civ. 4763, 2006 WL 2136249 (S.D.N.Y. Aug.1, 2006) ..............................................2

*Ventimigilia v. Hustedt Chevrolet,*
  Civ. No. 05-4149, 2009 WL 803477 (E.D.N.Y. Mar. 25, 2009) .............................................9

**STATUTES**

GBL § 349 ........................................................................................................................................3

N.Y. Ins. Law § 2601 ......................................................................................................................3

N.Y. Ins. Law § 2610 ......................................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2) ...................................................................................................................7

Local Rule 56.1 ....................................................................................................................*passim*

## PRELIMINARY STATEMENT

In support of its motion for summary judgment, Allstate submitted "short and concise" statements with citation to admissible evidence pursuant to Local Rule ("LR") 56.1.[1] In response, Mid Island failed to comply with LR 56.1 by submitting counterstatements which (i) are not "short and concise" counterstatements but lengthy argumentative objections; (ii) do not controvert Allstate's Rule 56.1 Statements ("AS"); (iii) do not provide citations to the record; (iv) consist of legal conclusions and unwarranted characterizations; and (v) consist of inadmissible evidence or self-serving conclusions. The following example underscores the response of Mid Island's Counterstatements ("CS"):

AS 17 - From 2002 to 2007, Mid Island repaired at least 5,100 vehicles that were insured by ten large insurance companies (the numbers for Travelers were adjusted but should be higher). (Jennings Rep. Table 1, fn.3.)

CS 17 - Objection to counsel's attempt to characterize Dr. Jennings Report. The table in question does not simply refer to "ten large" insurance companies, but the ten largest insurance companies whose cars were seen at Mid Island. [no citation to the record provided]

Rather than admit that at least 5100 vehicles were indeed serviced by Mid Island from 2002 to 2007 by various insurance companies, Mid Island asserts an objection to avoid admitting to Allstate's Statement. Such gamesmanship should not be condoned by this Court and demonstrates the necessity for Allstate's filing a motion to strike certain CS's. Mid Island does not adequately respond to Allstate's Rule 56.1 Statements, and thus, as specified in the instant motion, those Statements should be deemed admitted. For the Court's convenience, Allstate again has annexed hereto a summary chart to reflect Mid Island's CS's to each of Allstate's Rule 56.1 Statement, Allstate's basis for striking the particular MIC, and the proposed finding by the Court.

Mid Island's response to the inconsistency contained in the McGauvran Declaration regarding his purported 17-year experience as a mechanic is equally disingenuous. His Declaration states, "I worked for 17 years doing auto mechanical work, and have extensive experience with the set-up maintenance and management of both body shops and mechanical shops." (McGauvran Decl. ¶ 2.)

---

[1] Unless otherwise indicated, all defined terms in this reply brief are adopted from Allstate's initial brief in support of its motion to strike Mid Island's affidavits and counterstatements as well its motion for summary judgment. Mid Island's brief in opposition to Allstate's motion to strike is cited herein as "Opp. Strike 56.1 CS Br."

-1-

This purported work history and experience is inconsistent with his deposition testimony, where he testified under oath that he could not give a time frame when he worked as a mechanic. In its opposition, Mid Island now asserts -- without citation to the record -- that he worked "on and off" as a mechanic "from 1976 until today." Opp. Strike 56.1 CS Br. at 24. During his deposition, McGauvran was asked a set of straightforward question about his experience as a mechanic. He should not now be absolved from providing complete answers, especially when he was instructed explicitly at the beginning of his deposition to provide complete answers.

## ARGUMENT

### I. MID ISLAND'S COUNTERSTATEMENTS MUST BE STRICKEN.

#### A. Mid Island's General Objections

In order to distract this Court from the deficiencies of its CS's, Mid Island engages in the tactic of pointing to the alleged deficiencies of Allstate's Rule 56.1 Statements. Unfortunately for Mid Island, the subject of the instant motion is whether to strike the CS's due to their violation of Local Rule 56.1. If Mid Island had such objections to Allstate's 56.1 Statements, it should have filed its own motion to strike. *See U.S. Info Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763, 2006 WL 2136249, at *4 (S.D.N.Y. Aug.1, 2006) (citations omitted). As explained in Allstate's initial moving brief, the failure of a party to move to strike a defective affidavit or other evidentiary submission on a motion for summary judgment will generally constitute a waiver of the defect.

Notwithstanding the foregoing, Mid Island's attacks on Allstate's Rule 56.1 Statements are attempts to avoid admitting them. For example, Mid Island complains that certain Allstate Statements "cites a statute, regulation, insurance department opinion, or case law." Like the allegations in the Complaint (¶¶ 15-16), those Statements recite the relevant statutory and regulatory framework of Regulation 64 so that the Court can have proper context when considering the arguments in connection with Allstate's summary judgment motion. Rather than denying or admitting to these Statements, Mid Island responds with baseless objections. Accordingly, Allstate's Statements should be deemed admitted.

Similarly, Allstate submitted the unreported decisions (AS 40, 82-96) emanating from the state courts to establish the fact that those decisions exist and to provide relevant background information about the "feud" existing between Mid Island and insurers. Those decisions from the state courts -- which adjudicated <u>breach of contract claims</u> -- are generally not available on computer databases like LEXIS or WESTLAW, and are difficult to obtain unless one obtains the decisions from the clerk of the state court or one of the parties. Those decisions are also not "legal precedents" because Allstate is not using them to support any legal argument, but to show that Allstate has been acting consistently with state insurance laws, again in contravention to the allegations of the Complaint (¶¶ 20-22).

Without legal support, Mid Island further provides what it calls a "summary of how the *defendant's* Rule 56.1 statement violates the letter and spirit of the rule." Opp. Strike 56.1 CS Br. at 4-5. Specifically, in conclusory fashion, Mid Island claims that certain Allstate's 56.1 Statements are "citations to material not in evidence." Mid Island fails to provide any further reasons or case law in support of this conclusion. *Id.* Similarly, Mid Island objects that certain statements are "legal citation, without reference to fact." Opp. Strike 56.1 CS Br. at 5. Mid Island appears to be objecting to any 56.1 Statement that provides the legal and regulatory framework that would assist this Court in understanding the context of the dispute between the parties. In particular, Mid Island asserts in its CS's that Allstate "failed to negotiate reasonably" in violation of N.Y. Ins. Law § 2601, and that Allstate improperly "steered" or "attempted to steer" in violation of N.Y. Ins. Law § 2610. As explained in Allstate's summary judgment motion, these claims do not support a private right of action, and for other reasons articulated therein, do not support a claim for tortious interference of prospective business relations or for violation of GBL § 349. Nevertheless, it is important for this Court to understand the statutory, regulatory, and state litigation context of the dispute between the parties.

Mid Island next lumps "Contested 'facts' and pure legal conclusions." Opp. Strike 56.1 CS Br. at 5. Mid Island combines two very different concepts and then fails to specify which concept applies to which Statement. Likewise, the next category, "Mis-characterization and cherry picking of testimony and evidence," (*id.*) fails to provide any details, explanations, or legal citation. Moreover,

Mid Island simply makes up a concept of "cherry-picking" of evidence without offering any common sense or legal reason why an advocate would not select certain facts to support its arguments.

The final category is "Statements irrelevant to anything at issue in this matter." Opp. Strike 56.1 CS Br. at 5. Mid Island has usurped the role of this Court to determine what is relevant in the determination of Allstate's summary judgment motion. Indeed, Mid Island has unilaterally deemed the Travelers Concierge Agreement (AS 165-168) to be irrelevant. Mid Island's Concierge Agreement with Travelers is relevant, *inter alia*, for the following reasons: (i) the agreement contains labor rate information for both ABR and AMR which Travelers charges to Mid Island; (ii) the AMR rate in that Travelers agreement is significantly below the AMR rate specified in the Jennings Report; (iii) the Travelers rate is relevant to the issue of damages and causation of damages (or more appropriately, lack of damages and causation by Allstate vs. other insurers); and (iv) the undisputed fact that 498 insureds of Travelers paid the set labor rate of $50 per hour in 2007 (Jennings Decl. Ex. 2, sub Ex. A) contradicts Jesberger's Declaration and testimony that Travelers negotiates upward from the hourly rate set forth in the Concierge Agreement. Mid Island could have produced estimates with Travelers to demonstrate that it negotiates up from the Agreement rates. It did not do so during the discovery phase of this litigation for the simple reason that such estimates do not exist. Nevertheless, Mid Island's unilateral determination of relevancy is wholly without merit.

### B.     Mid Island's Specific Objections

Mid Island's specific objections fare no better. Certain Allstate's Statements summarize testimony by certain witnesses deposed during discovery to describe the "feud" that existed between Allstate and Mid Island. (*See* AS 42, 43, 46). In its CS's, Mid Island interposed objections and cited to self-serving statements by Jesberger and McGauvran that do not fully address Allstate's Statements.

Mid Island also objects to Allstate "cherry-picking" of facts. (*See* AS 50, 51-63, 119, 120.) The purpose of a Rule 56.1 Statement, however, is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without the guidance of the parties. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). The point

is to "cherry-pick" "material facts as to which the moving party contends there is no genuine issue to be tried" (L.R. 56.1(a)) in order to assist this Court to decide Allstate's summary judgment motion.

As for Mid Island's objection to the characterization of testimonies summarized by Allstate's Statements (AS 80-81), such objections are non-substantive. The following provides a clear example:

**AS 80** - McGauvran also admitted that the situation of a customer paying Mid Island and then suing Allstate for the differential occurred "infrequently." (McGauvran Dep. 414:8-25.)

**CS 80** - Objection, as the statement improperly characterizes Mr. McGauvran's testimony. The citation to Mr. McGauvran's testimony pointed to by the defendant states only that situations where either the customer does not pay the bill, or pays the bill and then sues his insurer, occurs "infrequently" when compared to the total number of vehicles repaired at Mid Island. (McGauvran deposition, Exhibit "D,"p. 414).

The following is the relevant excerpt from Mr. McGauvran's deposition:

> Q. Prior to 2007, prior to the time you were taking assignments, how frequently were the customers filing lawsuits against the insurers?
> Mr. Pupke: Customers who have paid their bill?
> Q. First the customer who doesn't pay the bill and then the customer who does pay the bill and then sues.
> A. Infrequently compared to the number of autos repaired at Mid Island Collision.
> Q. Under both scenarios?
> A. Yes.

From the foregoing, it is clear that Mid Island's objections are disingenuous.

As discussed above, Mid Island objects to Allstate's Statements describing that aspect of the feud involving litigation in state courts in which Mid Island was directly or indirectly involved as a party or witness for the insured and, in which, counsel appointed by Mid Island represented the insured/plaintiff against Allstate. Mid Island characterizes these statements as "legal precedent," but as explained above, Allstate is not using these state court cases in support of any legal argument or conclusion. (*See* AS 82, 87, 91-93, 96.)[2] The existence of the state court cases is a relevant fact to demonstrate, *inter alia*, that Mid Island, not Allstate, commenced litigation or embroiled the insureds in litigation, thereby contradicting the allegation in the Complaint that Allstate "threatened" its insured with litigation. (Compl. ¶ 43.)

---

[2] Mid Island again claims that the exhibit referenced in Statement 96 does not exist. In Allstate's motion to strike at p. 8, there is a reference that the correct exhibit is Exhibit 13 to the Hahn Declaration.

In certain instances, Mid Island clearly misrepresents the record. For example, in CS 98, Mid Island asserts, "[McGauvran] testified specifically that there were 'a lot more,' however six were what he could think of off the top of his head (id.)." In fact, McGauvran testified, "I <u>assume</u> there is a lot more [cars that were actually steered away from Mid Island]." (McGauvran Dep. 185:21-23; emphasis added.) When pressed for the basis of that assumption, Mr. McGauvran testified, "Like roaches, if there is one, there is a thousand." When asked, "Is that all? Anything else?," he responded, "Yeah. It's a pretty good analogy, I think." (McGauvran Dep. 185:24-186:5; s*ee also* Mid Island's Paragraph 196.) Another example of Mid Island's distortion of the record involves AS 113, which involved the allegation that Allstate threatened its insured with litigation. (*See* Compl. ¶ 43.) The deposition testimony unequivocally reflects that Allstate never sued any of its insureds, much less make any such threats. Yet, Mid Island takes exception -- of course, without any citation to the record -- to that undisputed fact by spinning the allegation such that Allstate would "embroil" the insureds in litigation.

AS 117 is yet another example of distorting the record. Jesberger undeniably testified that he recalled about 10 instances of retaliatory totaling. In its CS, Mid Island points to deposition testimonies of Allstate adjusters who were involved in such totaling, but those instances were the same 10 instances recalled by Jesberger. In any of the papers submitted by Mid Island in connection with Allstate's summary judgment motion, Mid Island fails to even identify by name of the insureds those 10 instances, or any others, and certainly failed to provide any computation of damages for those alleged retaliatory total losses.

Mid Island further characterizes certain Allstate statements as legal argument or legal conclusions (AS 100, 102), when in reality, they are factual statements. The following provides a clear example:

> **AS 102** - In fact, the NYSID investigated this steering issue and found that, with the exception of a few isolated instances, no insurer, including Allstate, engaged in systemic steering. (Scauzillo Decl. ¶ 22, Ex. J.)
>
> **CS** - "….This is a legal document and, not a factual assertion."

In its opposition papers, Mid Island further argues that "the legal conclusions which the defendant

attempts to draw in that paragraph ... are directly contradicted by the factual admissions made by Allstate's own personnel...." Opp. Strike 56.1 CS Br. at 11. Mid Island, however, is referring to few instances of "attempted steering," and completely ignores NYSID's finding of no "systemic" steering, which contravenes the Jennings M/R theory, rendering it unreliable.

Mid Island also makes numerous objections relating to the Jennings Report and Dr. Jennings deposition testimony. (AS 130, 132, 135, 139, 141, 143, 145-147, 151-152.) Mid Island's CS's object without basis as to what Dr. Jennings testified to during his deposition. The following provides a couple of clear examples:

> **AS 139** - The M/R ratios has not been generally accepted in the field of auto collision repairs. (Jennings Dep. 150:12-17.)
>
> **CS** - Objection to the characterization of Dr. Jennings' testimony. The theory has not yet been "accepted" because being a novel theory, it has not yet been subjected to peer review. (Jennings, Exhibit "X," p. 150).

The question in Dr. Jennings' deposition was: "And has the M/R ratio been generally accepted in this field of auto repair?" Dr. Jennings responded, "I would say that it hasn't been generally accepted because it hasn't been reviewed by -- you know, I haven't written any papers on it yet, so...."

> **AS 145** - Jennings is not an expert in automotive mechanical repairs ("AMR"). (Jennings Dep. 16:21-24.)
>
> **CS** - Objection to the characterization of Dr. Jennings' testimony. Dr. Jennings is an expert in the economics of the automobile collision repair industry. (Jennings, Exhibit "X," p. 15).

The question in Dr. Jennings' deposition was: "Do you consider yourself an expert in the economics of AMR, automotive repairs, mechanical repairs? His response was: "No, I would say not." Again, Mid Island has no basis to object. Clearly, Mid Island is seeking to avoid admitting Allstate's Statements.

With respect to AS 173 through 177, Allstate's motion to strike at p. 8 clearly states that it meant Exhibit A to Plaintiff's Expert Witness Identification Pursuant to Fed. R. Civ. P. 26(a)(2) dated July 8, 2009. Mid Island argues that "there is no indication whatsoever in their initial Statement that they actually intended to refer to that document, and as counsel makes no request here to amend that

Statement." Opp. Strike 56.1 CS Br. at 17. As a specific request, Allstate hereby amends its Rule 56.1 Statement to refer correctly to such Exhibit A.

As for Allstate's Statements regarding Mid Island's financial condition and profitability, the CS's in issue (180-183) object to the characterization and cite generally to the Jennings Report with no specific part or statement of that report. Mid Island again in self-serving, conclusory manner asserts that its profitability should have been higher.

### C.   Mid Island's Statements

As for Mid Island's own statements, Allstate properly moved to strike them on various grounds. A typical example is the following argument with regard to its "paragraph 185:"

> Similarly, there is no basis that the phrase "admitted attempts" in paragraph 185 was in any way a legal conclusion.... [T]hose Allstate employees in fact admitted that they recommended shops to insureds without being asked, specifically to <u>attempt to steer them, an act which is illegal in the State of New York</u>." (Emphasis added.)

Opp. Strike 56.1 CS Br. at 18. Mid Island's own words ("attempt to steer ... an act which is illegal") corroborate the nature of the CS as a legal conclusion. Moreover, nowhere in their papers, in the numerous briefs or elsewhere, does Mid Island provide any legal citation or case law to support that "attempted steering" constitutes illegal steering. Similarly, Mid Island's characterization of Jim Jarocki's testimony in Paragraph 186 is completely wrong. Jarocki never "admitted (at p. 216 of his deposition) that [sending out defective letters] was a violation of New York State Law." Opp. Strike 56.1 CS Br. at 18. Moreover, Mid Island's argument that <u>such an act in violation of a law is not a legal conclusion</u> is patently absurd.

As for the remaining paragraphs, Mid Island's opposition consists of conclusory assertions, nonsensical arguments, non-substantive rhetoric, and the occasional ad hominem attack on Allstate's counsel. Mid Island raises the argument of "vicarious admissions" of an agent as an exception to the rule against hearsay. (Paragraphs 194-195, 199-205). Mid Island fails to understand the concept of an "admission" or "statement against interest" under the rules of evidence. Simply stated, an alleged defamatory statement is not an admission. The case cited by Mid Island, *Smith v. Pathmark Stores, Inc.*, 485 F. Supp. 2d 235, 238 (E.D.N.Y. 2007), provides a classic example of an "admission." In that

case, the defendant's employee stated that "he was sorry for my slip and fall, that he was supposed to clean it up." *Id.* In contrast, Mid Island argues that certain Allstate adjusters made defamatory statement to its insureds about Mid Island. (*See, e.g.,* Paragraph 200 - "This defamation, conveyed to their insureds...."). An allegation that a person made a defamatory comment is not the same as an admission. *See Deutsche Asset Mgt., Inc. v. Callaghan*, No. 01 Civ. 4426 CBM, 2004 WL 758303, at * 13 (S.D.N.Y. Apr. 7, 2004) ("Here, Callaghan's allegations of defamation are quintessential hearsay: he relies on statements conveyed to him by [other employees] that a third party made to prove the truth of the matter that the defamatory statements were actually made."); *Ventimigilia v. Hustedt Chevrolet*, Civ. No. 05-4149, 2009 WL 803477, at *16 (E.D.N.Y. Mar. 25, 2009) (plaintiff's testimony that "he was told by a number of people that Chalom accused Plaintiff of stealing from him" constituted inadmissible hearsay of the alleged defamatory statement). Mid Island points to nothing in the record that the Allstate adjusters admitted to making any defamatory statement.

## II.   MID ISLAND'S AFFIDAVITS MUST BE STRICKEN.

With regard to McGauvran's experience as a mechanic, Mid Island asserts without any citation to the record that he "worked on and off as a mechanic from 1976 until today." Opp. Strike 56.1 CS Br. at 24. Mid Island further asserts (again without any citation to the record) that he "also performed mechanical [sic] while he was working at the delicatessen." *Id.* This purported "amplification" or "explanation" now contradicts his Declaration (17 years *vs.* on and off since 1976) as well as his deposition testimony:

> Q. Can you give me the time frame as to when you were a mechanic?
> A. <u>No.</u> It was right after college. <u>I couldn't give you an exact time frame.</u>
> Q. Early '80s, mid '80s?
> A. Yeah, early '80 would be good. '82, '84 I believe.

(McGauvran Dep. 21; emphasis added.)[3]  The bottom line is that McGauvran does not have 17 years of

---

3   At the beginning of his deposition, McGauvran was instructed to give complete answers:
   Q. And you are reminded to tell the truth, the whole truth. In other words, please give me a complete answer to my question. Do you understand that?
   A. Yes.
   Q. When you stop speaking, I will assume you have given me a complete answer. If you are not finished with your answer, please make sure to let me know that you're not finished and I'll let you finish. Otherwise, I will

-9-

experience in auto mechanical repairs and extensive experience with the set-up maintenance and management of mechanical shops. "On and off" is inconsistent with "extensive experience." The proposed Revised Jennings Report must be deemed unreliable because, *inter alia*, it relies on the McGauvran's non-existent expertise as a mechanic. (*See* Jennings Decl. ¶ 11.)

With respect to the Jesberger Declaration, Mid Island contends in its opposition, "The exhibits in question [to the Jesberger Declaration] are first, a list of the top 18 specific procedures which Allstate has refused to pay for in a random sampling of 250 Allstate-insured customers of Mid Island...." Opp. Strike 56.1 CS Br. at 23. Allstate will not re-hash its arguments in support of striking the new damages claims, theory, calculations, associated with these "procedures," but this notion of a "random sampling" further supports Allstate's position that such "new" calculations are impossible to duplicate from the hundreds of claims files produced by Mid Island. Mid Island admits that "these documents themselves were never produced for the simple reason that they are no more than a summary of information drawn from and contained in those files...." *Id.* at 24. Mid Island fails to respond to the pertinent cases cited by Allstate, namely *Design Strategy* and *American Realty Trust*, which places the burden upon the plaintiff to explain how it arrived at the damages calculations.[4] Mid Island also fails to address the fact that the alleged unpaid procedures were discussed in the context of pending state court litigation, including the *Berman* case, which is pending in state court.

As for the Ayres, Ercolano, and Marquez Affidavits, Mid Island produced those affidavits two days (and received one day) before the close of discovery. These affidavits were also buried in a "document dump" of two CDs, each containing numerous recordings (some of which were already produced) and approximately 1000 documents consisting of over 6,000 pages. (Invidiata Decl. Exs. F and G.) In addition, these affidavits are dated June 8, 2009 (Ayers), November 5, 2008 (Ercolano), and October 7, 2009 (Marquez). Mid Island offers no explanation why it waited

---

assume that you are finished and gave me your complete answer. Do you understand that?
    A.   Yup. (Hahn Decl. Ex. 4 - McGauvran Dep. 7:5-7:16.)

[4] *See* Allstate's Memo of Law in Opposition to Mid Island's Motion to Amend the Jennings Report and Testimony at pp. 13-14.

-10-

until the eve of the discovery deadline to produce these affidavits.

## CONCLUSION

For all of the foregoing reasons, the Court should: (i) grant the motion to strike in its entirety; (ii) grant Allstate's summary judgment motion in its entirety; (iii) dismiss the Complaint with prejudice; (iv) award to Allstate its attorneys' fees and/or costs; and (v) grant to Allstate such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        June 16, 2010

                                    Respectfully Submitted,

                                    **SEYFARTH SHAW LLP**

                                    By _/s/ Andrew T. Hahn, Sr._
                                         Andrew T. Hahn, Sr., Esq. (AH-6283)
                                         David Monachino, Esq. (DM-1527)
                                         James S. Yu, Esq. (JY-9734)
                                         Hema Chatlani, Esq. (HC-0126)

                                      620 Eighth Avenue
                                      New York, New York 10018
                                      (212) 218-5500
                                      Attorneys for Defendant
                                      Allstate Insurance Company