# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 07-CV-0187 (JFB) (MLO)

————————————

## M.V.B. Collision, Inc., d/b/a Mid Island Collision,

Plaintiff,

VERSUS

## Allstate Insurance Company,

Defendant.

————————————

**MEMORANDUM AND ORDER**
July 27, 2010

————————————

Joseph F. Bianco, District Judge:

Plaintiff M.V.B. Collision, Inc., which does business as "Mid Island Collision" ("plaintiff" or "Mid Island"), brings this diversity case against Allstate Insurance Company ("defendant" or "Allstate"). Mid Island is an auto-body shop. Mid Island and Allstate have had a long-running dispute over the appropriate rate for auto-body repairs. Mid Island alleges that, as a result of this dispute, Allstate agents engaged in deceptive practices designed to dissuade Allstate customers from having their cars repaired at Mid Island and to prevent Mid Island from repairing Allstate customers' cars.

Five motions are currently before the Court. First, Allstate has moved for summary judgment on the pending claims in this case—a claim for tortious interference with business relations and a claim that Allstate's actions violated § 349 of the New York General Business Law. Second, Allstate has moved to strike certain materials Mid Island submitted in opposition to summary judgment, including portions of Mid Island's Local Rule 56.1 counterstatement and portions of two affidavits. Third, Mid Island seeks to amend the complaint to add a claim for defamation and a claim for prima facie tort. Fourth, Allstate has moved to strike the report of Mid Island's damages expert. Finally, Mid Island has moved to serve an amended expert report.

As set forth below, construing the evidence most favorably to plaintiff, the Court concludes that summary judgment is unwarranted and denies the motion in its entirety. With respect to Mid Island's tortious

interference claim, there are triable issues of fact as to whether Allstate interfered with specific potential business relationships and whether Mid Island used "wrongful means" in doing so. Similarly, with respect to the § 349 claim, plaintiff has pointed to evidence that raises genuine issues of material fact as to whether Allstate engaged in a deceptive, consumer-oriented scheme designed to drive customers away from Mid Island. As such, summary judgment is not appropriate on either the tortious interference claim or the § 349 claim. The Court also denies Allstate's motion to strike portions of Mid Island's Local Rule 56.1 counterstatement of material facts and other documents submitted in opposition to summary judgment. The Court has, however, disregarded those portions of Mid Island's submissions not supported by admissible evidence.

With respect to Mid Island's motion to amend the complaint, the Court denies that motion as it relates to the proposed prima facie tort claim because such amendment would be futile. As to the proposed defamation claims, the Court is unable to determine whether such an amendment would be futile as to all such claims due to a lack of specificity as to the allegations. At oral argument, plaintiff's counsel stated that plaintiff would be able to provide more specificity to address the Court's concerns. Accordingly, the motion to amend to add defamation claims is denied without prejudice, and Mid Island may submit a proposed amended complaint that asserts its defamation claims with greater specificity.

With respect to the remaining motions, which seek to strike the report of Mid Island's damages expert and to amend the expert report, the Court reserves decision pending a

pre-trial hearing to address those issues.

## I. MOTION TO STRIKE

Allstate has moved to strike portions of Mid Island's Local Rule 56.1 counterstatement of material fact because certain counterstatements (1) contain no citation to the record; (2) contain legal argument or are conclusory; and/or (3) are baseless objections.

A party moving for summary judgment must file a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). A party opposing summary judgment must then submit a counterstatement of material facts responding to each assertion that the moving party made. *See* Local Rule 56.1(b). The assertions in both the moving party's statement and the opposing party's counterstatement must be supported by admissible evidence. *See* Local Rule 56.1(d). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Although many of Mid Island's responses in its counterstatement fail to comply with Local Rule 56.1, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73; *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the

exercise of its broad discretion, the Court denies Allstate's motion to strike portions of Mid Island's Local Rule 56.1 statement. However, where Mid Island has denied or objected to an assertion by Allstate, the Court only deems that assertion disputed where Mid Island provides admissible evidence to support its denial or objection.

Allstate has also moved to strike specific portions of affidavits of Robert Jesberger, Mid Island's owner, and Brian McGauvran, Mid Island's General Manager. Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits filed in connection with a summary judgment motion "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated." Fed. R. Civ. P. 56(e). "A court may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999). However, that is not the only option available to the Court when confronted with such an affidavit. In particular, although a court certainly cannot consider inadmissible evidence contained in an affidavit submitted in opposition to a summary judgment motion, the Court is not obligated to engage in the time-consuming, cumbersome process of formally striking such evidence in a line-by-line fashion. *See, e.g.*, *Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, No. 05 Civ. 09087(PGG), 2009 WL 1576467, at *8 (S.D.N.Y. June 2, 2009) ("'[N]othing in the rules or the case law requires a court to strike any portion of . . . [a Rule 56(e)] affidavit that is not properly supported.'" (quoting *Miller v. Batesville Casket Co.*, No. 02-Civ.-

5612(DLI)(ARL), 2007 WL 2120371, at * 6 (E.D.N.Y. July 23, 2007))). Instead, "a court may decline to conduct a line-by-line analysis and . . . simply disregard the allegations that are not properly supported." *Id.* Accordingly, here, the Court has simply disregarded those portions of the Jesberger and McGauvran affidavits that are not based on personal knowledge or that rely on hearsay or otherwise inadmissible evidence.

The Court also rejects Allstate's argument that the Jesberger and McGauvran declarations should be stricken in their entirety because the declarations were not made "under penalty of perjury." Although neither declaration contains the "under penalty of perjury" language, both declarations are notarized and indicate that the declarants were "duly sworn." *Cf. Davenport v. Bd. of Trs. of the State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073, 1084 (E.D. Cal. 2009) (declining to consider declaration submitted in connection with summary judgment motion where the "declaration was signed, but was not made under penalty of perjury and *[the declarant did] not otherwise attest that the contents are true*." (emphasis added)). Finally, Allstate argues that McGauvran's declaration should be stricken because it conflicts with his deposition testimony regarding his experience as an auto mechanic. The Court need not resolve this issue, however, because McGauvran's work history is irrelevant to the pending summary judgment motion.[1]

_____

[1] Allstate also moved to strike the declarations of David Ayres, Annette Ercolano, and Karyn Marquez because, it claimed, those documents were not produced in discovery. However, Allstate now acknowledges that the documents were in fact produced. (*See* Def.'s Reply Mem. of Law (Motion to Strike) at 9-11.) Accordingly, the

## II. MOTION FOR SUMMARY JUDGMENT

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. Where one party's Local Rule 56.1 statement is cited, the opposing party either does not deny the assertion or does not support its denial or objection with admissible evidence. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Accordingly, with regard to Allstate's motion for summary judgment, the Court shall construe the facts in favor of Mid Island.

### A. Background

#### 1. Overview

##### a. The Parties

Allstate sells car insurance. (*See* Def.'s 56.1 ¶ 12.) Mid Island performs auto body work on cars that have been in accidents. (*Id.* ¶ 1.) Mid Island is one of the few auto-body shops in the country where the employees are trained on and use the same tools that the Mercedes Benz company uses in its factories.

##### b. The Relevant Regulatory Framework

The New York State Insurance Department's Regulation 64 governs the insurers' actions in the auto collision repair process. (Def.'s 56.1 ¶ 24.) When someone's car is involved in an accident and the person

makes an insurance claim, the person's insurer may inspect the car. *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(b)(1). When inspecting the car, the insurer must attempt to negotiate with the insured or the insured's "designated representative"—which can include an auto repair shop such as Mid Island—regarding the costs of repair. (*See* Def.'s 56.1 ¶ 28 (citing N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(b)).) Negotiations must be conducted in good faith, and the insurer must make a "'good faith offer of settlement, sufficient to repair the vehicle to its condition immediately prior to the loss.'" (Def.'s 56.1 ¶¶ 27-28 (quoting N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(b)(1) and citing N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(b)(7)).) If a price cannot be agreed on, then the insurer sends the insured a "Notice of Rights" letter which indicates the insurer's offer and states that, upon request, the insurer can provide a repair shop willing to make the repairs at the insurer's estimate. (*Id.* ¶¶ 32-33 (citing N.Y. Comp. Codes R. & Regs. tit. 11, 216.7(b)(14)(i)).)

##### (1) Steering

The New York State Insurance Law prohibits an insurer from recommending a repair facility to an insured unless the insured first requests a recommendation. An insurer's unsolicited recommendation regarding a repair facility—or "steering"—is prohibited under the law. *See* N.Y. Ins. Law § 2610.[2]

---

[2] Section 2610 reads, in full,

(a) Whenever a motor vehicle collision or comprehensive loss shall have been suffered by an insured, no insurer providing collision or comprehensive coverage therefor shall require that repairs be made to such vehicle in a particular

---

Court also denies the motion to strike these affidavits.

### (2) Totaling

In some cases, an insurer may deem a car "totaled." Under state law, a car is required to be totaled when the damage to the car exceeds 75% of the car's value. (*See* Def.'s 56.1 ¶ 118 (citing N.Y. Comp. Codes R. & Regs. tit. 11 § 216.7(b)(16)).) Mid-Island contends that Allstate routinely "totaled" cars at Mid Island where the damage was much less than 75%.

### 2. Disputes Between Allstate and Mid Island

Allstate and Mid Island disagree over how much it should cost to repair cars. This dispute has gone on since approximately 2002. Over the last six years, whenever Allstate has been unable to agree with Mid Island on the labor rate for a particular repair job, Mid Island has filed a complaint with the New York State Insurance Department asserting that Allstate failed to negotiate in good faith. (Def.'s 56.1 ¶ 48.) Mid Island has filed approximately 200 such complaints. (*Id*. ¶ 47.)

Disputes between Mid Island and Allstate have also found their way to state courts. Mid Island customers have brought state court lawsuits against Allstate for failing to pay Mid Island's labor rate. On over 100 occasions between 2004 and 2008, Mid Island entered into agreements with these customers in which Mid Island either took an "assignment of rights" from the customer or agreed to refer the customer to counsel and fund litigation. (*Id*. ¶ 76.) The parties disagree as to how to characterize the results in many of these state court cases. (*Compare id*. ¶ 82 *with* Pl.'s 56.1 ¶ 82.)

### 3. Facts Relevant to the Pending Motions

Mid Island contends that, because of the pending state-court litigations and because of the parties' dispute over how much repairs should cost, Allstate engaged in a series of retaliatory practices against Mid Island and Allstate insureds who wished to have their cars repaired at Mid Island. These retaliatory practices allegedly included "steering" and "totaling" of cars.

It is undisputed that Allstate adjusters "totaled" some vehicles even though the visible damage to the vehicles did not reach the 75% threshold. (*See* Def.'s 56.1 ¶ 119.) Allstate contends that these vehicles were totaled because there was the potential for hidden damage such that the car had the "potential" to reach the 75% number. (*See id*.) As noted above, Mid Island contends this was done in retaliation for the disputes over labor costs and in retaliation for the state-court lawsuits.

Additionally, it is undisputed that, on some occasions, Allstate agents attempted to "steer" cars out of Mid Island. (*See* Def.'s 56.1 ¶¶ 98-102.) However, the parties strongly dispute how much attempted steering occurred and how often Allstate agents were successful in steering cars out of Mid Island. There is also evidence that Allstate agents told potential Mid Island customers that Mid Island's prices

---

place or shop or by a particular concern.

(b) In processing any such claim (other than a claim solely involving window glass), the insurer shall not, unless expressly requested by the insured, recommend or suggest repairs be made to such vehicle in a particular place or shop or by a particular concern.

were "ridiculous,"[3] that Allstate had a "big problem" with Mid Island,[4] that Mid Island was engaged in "extortion,"[5] and that Mid Island was a "bad facility that was engaged in price gouging and illegal activities."[6]

### 4. Procedural History

Mid Island filed the complaint in this action on January 12, 2007. The complaint asserted claims for (1) tortious interference with prospective business relations; (2) violations of New York General Business Law § 349; (3) a permanent injunction preventing Allstate from, *inter alia,* violating the New York State Insurance Law; and (4) a declaratory judgment that Mid Island was entitled to a labor rate of between $80 and $95 per hour for high-end cars and $65 per hour for ordinary cars.

Three months later, on April 11, 2007, Allstate moved to dismiss the § 349 claim and the declaratory judgment claim. In a Memorandum and Order dated August 8, 2007, this Court granted the motion with respect to the declaratory judgment claim and denied it with respect to the § 349 claim. *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 07-CV-0187 (JFB), 2007 WL 2288046 (E.D.N.Y. Aug. 8, 2007). On the § 349 claim, the Court held that the complaint pled a plausible claim that Allstate engaged in consumer-oriented deceptive acts or practices. The claim was plausibly consumer oriented because "[t]he conduct alleged by plaintiff in this case relates to a number of policyholders

who either are, or potentially could be, Mid Island customers, all of whom are subject to Allstate's standard form insurance policy." *Id*. at *4. Furthermore, the complaint adequately alleged that Allstate had engaged in deceptive practices because it claimed that Allstate had "among other things, threaten[ed] and misrepresent[ed] facts to its policyholders in order to steer them away from Mid Island." *Id.* at *6. Mid Island also voluntarily withdrew its claim for a permanent injunction. *Id*. at *1 n.1.

Discovery began after this Court ruled on the motion to dismiss. It ended in late December 2009. A series of motions, enumerated above, followed.

### B. Standard of Review

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

---

[3] (Welch Aff. )

[4] (Ercolano Aff. ¶¶ 5-6.)

[5] (Marquez Aff. ¶ 5.)

[6] (Rouse Aff. ¶ 6.)

(summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)).  As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  *Id.* at 247-48 (emphasis in original).  Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed.  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)).  Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'"  *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## C. Discussion

For the reasons that follow, the Court denies Allstate's motion for summary judgment because triable issues of fact exist on Mid Island's tortious interference claim and on its claim under § 349 of the New York General Business Law.

### 1. Tortious Interference

Under New York law,[7] the elements of a claim for tortious interference are that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

#### a. Elements 1, 2, and 4: Interference with a Specific Business Relationship; Injury

Allstate correctly points out that, to succeed on a tortious interference claim, Mid Island must present evidence that Allstate has interfered with specific business relationships.  General allegations that Allstate interfered with "many" or hundreds of potential Mid Island customers will not suffice.  *See, e.g.*, *Desert Beauty v. Fox*, 568 F. Supp. 2d 416, 429 (S.D.N.Y. 2008) ("'Public and customers at large are far too general to constitute a third party' for purposes of a tortious interference claim." (quoting *Gen. Motors Corp. v. Dealmaker LLC*, No. 07 Civ. 141 (TJM), 2007 WL 2454208, at *9 (N.D.N.Y. Aug. 23, 2007)); *see also Simaee v. Levi*, 802 N.Y.S.2d 493, 497 (App. Div. 2005).

Nevertheless, if plaintiff's evidence is fully credited at trial, there is evidence from which

---

[7] The parties do not dispute that the substantive law of New York applies in this diversity case.

a rational jury could find that Allstate interfered with specific business relations between Mid Island and a third party. For example, two potential Mid-Island customers, John Aragona and Janet Rouse, stated that they intended to have Mid Island repair damage to their cars, but, instead, an Allstate adjuster declared their cars a total loss.[8]

Additionally, there is other evidence that, on specific occasions, Allstate "totaled" cars that would otherwise have been repaired by Mid Island. An Allstate adjuster, Steve Russo, testified that, on one particular day, Allstate totaled two cars at Mid Island even though the damage to each car was less than 50

[8] Mid Island submitted a number of declarations from customers in opposition to the motion for summary judgment. (*See* Invidiata Decl. Exs. N-V.) These declarations attest to, *inter alia*, attempts at steering or retaliatory totaling by Allstate. However, the incidents described in most of the declarations—including the Aragona and Rouse declarations—occurred after the filing of the complaint in this case. (*See* Invidiata Decl. Exs. N-R; T-V.) Nevertheless, Mid Island cites these declarations in its Local Rule 56.1 counterstatement and in opposing summary judgment. (*See, e.g.*, Pl.'s Opp. 56.1 ¶¶ 184, 194; Pl.'s Mem. of Law at 5, 7, 15-16.) In briefing on the pending motion for summary judgment and on the motion to strike, Allstate has not objected to these declarations on the ground that the incidents described post-date the complaint. Nor has it disputed the factual assertions in the declarations. (*See* Def.'s Mem. of Law In Support of Motion to Strike at 9, 12.) Thus, although the incidents post-date the complaint, the Court will deem the complaint amended to conform with the evidence on the summary judgment motion. *See Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993) ("[T]he undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b)."). Moreover, the allegations in the declarations do not raise new claims or theories of liability. Instead, they simply provide factual support for the allegations made in the original complaint that Allstate agents have "totaled" cars at Mid Island to retaliate against Mid Island, attempted to steer cars away from Mid Island, and otherwise attempted to dissuade Allstate policyholders from

going to Mid Island. (*See* Compl. ¶ 5.) As such, there is no prejudice to Allstate because Allstate has been aware since the outset of this litigation that Mid Island was alleging that Allstate was engaging in such tactics. *Cf. Jund v. Town of Hempstead*, 941 F.2d 1271, 1286-87 (2d Cir. 1991) (affirming admission of evidence regarding events that occurred following filing of complaint because, even though plaintiff did not formally seek to amend complaint, the events arose "out of the scheme that was the focus of the pleadings, the claims are directly related to the earlier violation, and there was no undue prejudice to the defendants"); *Hubbard v. Port Auth. of N.Y. & N.J.*, No. 05 Civ. 4396 (PAC), 2008 WL 464694, at *7 (S.D.N.Y. Feb. 20, 2008) (considering, on a motion for summary judgment in an employment discrimination case, conduct that post-dated the complaint because, *inter alia*, "upon service of the Complaint, Defendants were on notice that Plaintiffs were alleging a continuing action based on Defendants' allegedly discriminatory conduct and creation of a hostile work environment [and t]he challenged affidavits speak directly to that course of conduct"); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569-70 (2d Cir. 2000) (concluding that district court properly considered hostile work environment claim on motion for summary judgment even though complaint did not assert such a claim because, at oral argument on summary judgment motion, [defendant's counsel] "did not claim that [plaintiff's] tardiness had disadvantaged [defendant] in any respect. Rather, she attacked [plaintiff's] claim on the merits"). However, if Allstate wishes to re-open discovery to take the deposition of any of these individuals, the Court will allow it to do so.

percent[9]—far below the 75 percent New York State threshold described above. Russo stated that, in his 33 years of working for Allstate, he could not recall a time when two cars were totaled on the same day even though the damage was only 50 percent of the value. (Russo Dep. 217:11-16.)

In sum, there is evidence that, on specific occasions, insureds sought to have Mid Island repair their cars, but Allstate interfered with the relationship between the insured and Mid Island by "totaling" the vehicles. Because Mid Island was unable to repair the cars in question, it was injured as a result. Thus, there are issues of fact regarding the first, second, and fourth elements of Mid Island's tortious interference claim that prevent summary judgment on that claim.

b. Element 3: Wrongful Means

There are also issues of fact regarding the third element—whether Allstate "acted for a wrongful purpose or used dishonest, unfair, or improper means." *Catskill Dev., L.L.C.*, 547 F.3d at 132.

In *Carvel Corp. v. Noonan*, 818 N.E.2d 1100 (N.Y. 2004), the New York Court of Appeals elaborated on this element. *Carvel* was a lawsuit by Carvel franchisees against the Carvel Corporation. Hoping to curb a decline in business, the corporation had begun selling its ice cream products in supermarkets, often at lower prices than it sold the products in its franchisee stores. The corporation also instituted other policies to promote the sale of Carvel products in supermarkets, including issuing coupons that could be redeemed in supermarkets but not in franchisee stores.

Some franchisees sued the corporation in federal court asserting, *inter alia*, tortious interference claims. Following a jury verdict in the franchisees' favor on the tortious interference claims, the corporation appealed to the Second Circuit. The Second Circuit, in turn, certified to the New York Court of Appeals, *inter alia*, the question of whether Carvel's conduct amounted to tortious interference with business relations.

The Court of Appeals answered that it did not. Specifically, the court found that Carvel's conduct did not meet the wrongful means element. The court explained that, "as a general rule," the wrongful means element is satisfied only by showing that "the defendant's conduct [amounted] to a crime or an independent tort." 818 N.E.2d at 1103. The franchisees had not demonstrated that the corporation's conduct was criminal or independently tortious. *Id.* at 1103. The court also recognized that one exception to the "general rule" exists when a "defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Id.* (quoting *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.*, 628 N.Y.S.2d 408, 410 (App. Div. 1995)). Such conduct may satisfy the wrongful means element even if not criminal or independently tortious. *See id.* That exception, however, did not apply in *Carvel* because it was undisputed that economic self-interest, and not malice, drove the corporation's implementation of the supermarket program. *Id.* ("Carvel wanted to reverse a period of business declines and make itself more profitable. It was not acting solely to hurt the franchisees . . . .").

The *Carvel* court expressly declined to decide whether other exceptions to the "general rule" might exist. *Id.* at 1103-04 ("[W]e do not decide today, whether any other

---

[9] (Russo. Dep. 217:2-19.)

exception to the general rule exists—whether there can ever be other instances of conduct which, though not a crime or tort in itself, was so 'culpable' . . . that it could be the basis for a claim of tortious interference with economic relations."). Moreover, the court rejected, for two reasons, the franchisees' argument that the wrongful means element was satisfied because the corporation had applied wrongful economic pressure. First, any economic pressure was directed at the franchisees, not at the third party consumers with whom the corporation had interfered. *Id.* at 1104-05. Second, the activities the franchisees complained about did "not amount to the sort of extreme and unfair 'economic pressure' that might be 'wrongful' . . . ." *Id.*

In the years since *Carvel*, courts have been reluctant to find non-criminal or non-tortious conduct nonetheless sufficiently malicious or culpable to satisfy the "wrongful means" element. *See Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 346 (S.D.N.Y. 2008) (collecting cases).

Nevertheless, in this case, a rational jury could find that Allstate's conduct with respect to totaling certain cars was sufficiently malicious, extreme, unfair, culpable, or egregious to qualify as "wrongful means." For example, plaintiff has submitted the declaration of an Allstate insured, John Aragona, who took his car to Mid Island to be repaired following an accident. (Aragona Aff. ¶¶ 2-3.) According to Aragona, several days after bringing his car to Mid Island, an Allstate adjuster, John DiGiose, called Aragona and told him that Allstate and Mid Island agreed how the car should be repaired but could not agree on a labor rate. (*Id*. ¶ 4.) DiGiose told Aragona to tell Mid Island to repair the car for what Allstate said it should cost. (*Id*.) After Aragona refused, DiGiose

responded that he was "just gonna total your car, that way there's no further problem." DiGiose then determined that the car was totaled. (*Id.* ¶¶ 5-6.) As a result of DiGiose's "totaling" of Aragona's car, Mid Island did not repair the car, and Aragona was forced to buy a new vehicle he "could not reasonably afford at the time." (*Id.* ¶ 14.) According to Aragona, DiGiose told him in a subsequent conversation that he totaled the car out of "anger and frustration" but that he could not rescind the decision. (*Id*. ¶ 11.) Similarly, another customer-affiant, Janet Rouse, stated that Allstate declared her car a total loss even though she had been able to drive the car to Allstate. (Rouse Aff. ¶¶ 4, 6.) Furthermore, as noted above, Allstate adjuster Steve Russo testified that Allstate once totaled total two cars in the same day at Mid Island even though the damage to each car was only 50 percent of the car's value. Russo stated that he could not recall this happening at any other point in his 33-year career at Allstate. (Russo Dep. 217:11-16.) Viewed in a light most favorable to Mid Island, these incidents create issues of fact as to whether Allstate's decisions to total certain cars went well beyond ordinary business practices and instead were egregious, extreme, unfair, or motivated solely out of malice toward Mid Island.[10]

---

[10] However, some of the other evidence that Mid Island relies on fails as a matter of law to establish a tortious inference claim. As explained above, to prevail on a tortious interference claim, the plaintiff must identify a specific business relationship with which the defendant interfered. Thus, allegations regarding Allstate's policies and practices do not, by themselves, establish a claim of tortious interference. Similarly, both in his deposition testimony and in an affidavit accompanying Allstate's opposition to the pending motion, Jesberger relates what potential

In sum, there are triable issues of fact as to whether Allstate tortiously interfered with potential business relationships between Mid Island and specific third parties, and, thus, summary judgment on that claim is unwarranted.

## 2. Section 349 Claim

To establish Allstate's liability under § 349, Mid Island must establish that Allstate "has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [it] suffered injury as a result of the allegedly deceptive act or practice." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *see also Cohen v. JP Morgan & Chase Co.*, 498 F.3d 111, 126 (2d Cir. 2007).

### a. Standing

As a threshold matter, Allstate argues that Mid Island does not have standing to bring an action under § 349. In making this argument Allstate relies principally on two New York Court of Appeals cases: *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834 (N.Y. 2009) and *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004). In the earlier case, *Blue Cross & Blue Shield*, health insurance companies filed a lawsuit in this district against cigarette manufacturers, alleging a number of federal and state claims, including a § 349 claim. Their theory on the § 349 claim was that (1) the cigarette manufacturers engaged in deceptive practices by not revealing the harmful effects of smoking, and (2) as a result of these deceptive practices, people smoked, (3) got sick, and, therefore, (4) the insurance companies' costs increased. At trial, the plaintiffs won a jury verdict. On appeal, the Second Circuit certified to the New York Court of Appeals the question of whether the claims of the health insurance companies' claims were "too remote" to permit suit under § 349.

The Court of Appeals answered that the claims were too remote. It explained that, although the statute permitted recovery to all those "injured 'by reason of'" a deceptive business practice, there was no evidence that statute allowed for recovery of those suffering derivative or indirect injuries. The court defined such injuries as those occurring "solely as a result of injuries sustained by another party." 818 N.E.2d at 1145. The plaintiff's injuries were indirect because "the losses . . . experienced arose wholly as a result of smoking related illnesses suffered by [its] subscribers." *Id.*

Four years later, in *Smoke-Spirits*, the Court of Appeals elaborated on the concept of derivative injuries and § 349. In *Smoke-Spirits*, New York City sued internet cigarette retailers alleging a number of federal and state claims, including a § 349 claim. The City alleged that the retailers engaged in deceptive practices because they represented that their cigarette sales were "tax free" or that the purchasers did not have to pay taxes even though, in reality, New York purchasers were in fact responsible for paying the high city and state cigarette taxes. The district court dismissed the City's claims. On appeal, the Second Circuit certified to the New York Court of Appeals, *inter alia*, the question of whether the City had standing to assert a § 349

---

Mid Island customers told him regarding their experiences with Allstate. This is classic hearsay and, without admissible proof, cannot be used to support a tortious interference claim, or any claim for that matter.

claim.[11]

Relying on *Blue Cross & Blue Shield*, the Court of Appeals answered that the city did not. The Court of Appeals reasoned that "had the allegedly deceived consumers not been improperly induced to purchase defendants' cigarettes[,] then the City would have no claim to lost tax revenue." 911 N.E.2d at 838. The court further explained that, although the city was injured in some sense by the defendants' conduct, "but for" causation was insufficient to establish a claim under § 349. *Id.* at 839.

Allstate argues that *Blue Cross & Blue Shield* and *Smokes-Spirits.com* are directly on point here and compel summary judgment on the § 349 claim. The Court disagrees. In *Blue Cross & Blue Shield* and *Smokes-Spirits.com*, the plaintiffs' injuries were several steps removed from the defendant's allegedly deceptive acts. Here, by contrast, Mid Island allegedly suffered its injury at the same time the deceptive act occurred. When, for example, Allstate allegedly engaged in a retaliatory totaling or steered a car away from Mid Island, not only was the customer the victim of a deceptive practice, but Mid Island also suffered a loss of business or other injury. *Cf. Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 214 (App. Div. 2010) ("'[P]roof that a material deceptive act or practice caused actual, although not necessarily pecuniary

harm is required to impose compensatory damages.'" (quoting *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999))).

In sum, given that Mid Island's alleged injuries occurred as a direct result of the alleged deceptive practices directed at consumers, its injuries were not "solely as a result of injuries sustained by another party," *see Blue Cross & Blue Shield*, 818 N.E.2d at 1145, and are therefore not derivative.

Additionally, one concern underlying both *Blue Cross & Blue Shield* and *Smokes-Spirits.com*—specifically, the threat of a "tidal wave of litigation"[12]—is not present here. Although not *sui generis*,[13] the circumstances

---

[11] The Second Circuit also reversed the district court's decision to dismiss the plaintiffs' RICO claims. *City of N.Y. v. Smokes-Spirits.com*, 541 F.3d 425, 458 (2d Cir. 2008). Earlier this year, the Supreme Court of the United States reversed that portion of the Second Circuit's decision. *See Hemi Grp., LLC v. City of N.Y.*, 130 S. Ct. 983, 994 (2010). The § 349 claims were not at issue before the Supreme Court.

[12] *See Smokes-Spirits.com*, 911 N.E.2d at 839 ("If a plaintiff could avoid the derivative injury bar by merely alleging that its suit would somehow benefit the public, then the very 'tidal wave of litigation' that we have guarded against . . . would loom ominously on the horizon." (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995)); *Blue Cross & Blue Shield*, 818 N.E.2d at 1144 ("Indeed, we have warned against the 'potential for a tidal wave of litigation against business that was not intended by the Legislature.'" (quoting *Oswego Laborers'*, 647 N.E.2d at 745))).

[13] The Court is aware of one other case in this circuit in which an auto-body shop sued insurers alleging that the insurers, *inter alia*, tortiously interfered with business relationships by steering customers away from the auto-body shop. *See Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.*, Nos. 08-CV-00494(A)(M), 08-CV-00541(A)(M), 08-CV-00566(A)(M), 08-CV-00583(A)(M), 2009 WL 891837 (W.D.N.Y. Feb. 5, 2009), *Report and Recommendation modified by* 2009 WL 910969 (W.D.N.Y. Mar. 31, 2009). The plaintiffs in *Jim Mazz* did not, however, bring a § 349 claim.

of this case are relatively unique. Finding that Mid Island has standing here does not raise the specter of a "tidal wave" in the same way that allowing an insurance company to sue simply because one of its insureds had allegedly been deceived does.[14] *Cf. Blue Cross & Blue Shield*, 818 N.E.2d at 1144. Nor would it result in further litigation in the way that allowing a § 349 claim based largely on allegations that the suit would benefit the public would. *Cf. Smokes-Spirits.Com*, 911 N.E.2d at 839.

Finally, Allstate claims that Mid Island cannot bring a § 349 claim because it is not a consumer or a competitor of Allstate. The Court disagrees. Notably, the Court of Appeals in *Smokes-Spirits.com* declined to hold that only consumers could bring a § 349 claim. 911 N.E.2d at 840 n.3 ("The present case offers no occasion for us to opine upon the classes of potential plaintiffs who may or may not have standing to sue under [§ 349.]"). The Court went on to note that the statute's legislative history supported the position that "business competitors have standing under the statute." *Id.* Nothing in the opinion indicates, however, that *only* consumers and competitors have standing to sue under the statute. In fact, the plain text of the statute allows "*any person* who has been injured by reason of any violation of this section" to bring suit. In sum, Mid Island has standing to bring this § 349 claim.

### b. No Private Right of Action

Allstate also argues that Mid Island's § 349 claim must fail because Mid Island is attempting to get around the fact that there is no private right of action under New York Insurance Law § 2601 and § 2610. Section 2601 prohibits insurers from engaging "in unfair claim settlement practices" by, for example, "knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue." N.Y. Ins. Law § 2601. As discussed in the background section of this opinion, § 2610 prohibits steering. Courts have held that a private right of action is not available under either statute. *See, e.g.*, *Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.*, Nos. 08-CV-00494(A)(M), 08-CV-00541(A)(M), 08-CV-00566(A)(M), 08-CV-00583(A)(M), 2009 WL 891837, at *1 (W.D.N.Y. Feb. 5, 2009) (§ 2610), *Report and Recommendation modified on other grounds*, 2009 WL 910969 (W.D.N.Y. Mar. 31, 2009); *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 282 (S.D.N.Y. 2005) (§ 2601) (citing *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 634 N.E.2d 940 (N.Y. 1994)).

---

[14] Although Allstate is concerned that there are aspects to plaintiff's lawsuit that seek to elevate normal interactions between insurers, insureds, and repair shops into a § 349 claim, such issues can be addressed by a motion *in limine* to preclude certain evidence from being offered during the trial. In other words, even though the Court has concluded that defendant is not entitled to summary judgment on its § 349 claim because certain evidence, if proven, would establish liability under § 349, that does not mean that the Court has likewise concluded that plaintiff can offer the long history regarding Allstate's dealings with hundreds of individual customers at Mid Island in support of this claim (or the tortious interference claim). This type of "kitchen-sink" approach, if utilized by Mid Island in this case at trial, clearly raises relevancy issues, as well as the real specter of unnecessary mini-trials, jury confusion, and unfair prejudice to Allstate under Rule 403 of the Federal Rules of Evidence. However, the Court need not resolve this evidentiary issue for purposes of the summary judgment motion.

As Allstate correctly points out, the Second Circuit has held that "[p]laintiffs cannot circumvent" the lack of a private right of action under a statute "by claiming [that a violation of the statute] is actionable under § 349." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). In *Conboy*, for example, the plaintiffs brought a § 349 claim in which the alleged deceptive act was the violation of another New York state statute, New York General Business Law § 601, which prohibited creditors from engaging in certain practices. The New York Court of Appeals, however, had previously held that § 601 did not include a private right of action. *See Conboy*, 241 F.3d at 258 (citing *Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218 (N.Y. 1993)). Therefore, the Second Circuit declined to let the plaintiff use § 349 to assert a violation of § 601. *Id.*; *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (holding that plaintiff could not assert a § 349 claim predicated on a section of the New York Public Service Law for which there was no private right of action).

However, *Conboy* and *Broder* are distinguishable from the situation here. Neither case held that a § 349 claim is barred simply because some overlap exists between the deceptive practices at issue and a state statute for which there is no private right of action. Indeed, in *Broder*, when the Second Circuit affirmed dismissal of the plaintiff's § 349 claim, it noted that the plaintiff did "not make a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under [the Public Service Law provision]." *Broder*, 418 F.3d at 200.

Here, by contrast, there is evidence of a "free-standing claim of deceptiveness" that simply "happens to overlap" with a claim under the Insurance Law. Specifically, the deceptive practices at issue here extend beyond "unfair claim settlement practices," *see* § N.Y. Insurance Law 2601, or steering. N.Y. Insurance Law § 2610. As discussed *infra*, the deceptive practice at issue here is an alleged retaliatory scheme to dissuade Allstate insureds from going to Mid Island. The alleged scheme involved not only "unfair settlement practices" and steering but also, *inter alia*, alleged retaliatory totaling of vehicles, defamatory comments, and threats that insureds would "wind up in civil remedies if they took their car to Mid Island Collision." (*See* Jesberger Dep. 434:12-16.) Thus, there is evidence that the scheme extended beyond steering, beyond settlement practices, and, accordingly, beyond § 2601 and § 2610. *Cf. Sotheby's Inc. v. Minor*, No. 08 Civ. 7694 (BSJ) (HBP), 2009 WL 3444887, at *5 (S.D.N.Y. Oct. 26, 2009) (distinguishing *Conboy* because, although plaintiff's § 349 claim relied in part on regulation for which there was no private right of action, plaintiff's "allegation of deceptive practices does not rest solely on an alleged violation of [the regulations]").

Additionally, other Second Circuit case law counsels against reading *Conboy* and *Broder* too broadly in the insurance context. In *Riordan v. Nationwide Mutual Fire Insurance Co.*, 977 F.2d 47 (2d Cir. 1992), the Second Circuit rejected the defendant's argument that the New York Insurance Law preempted § 349 suits against insurance companies. 977 F.2d at 51-52. Although decided before the Second Circuit's decisions in *Conboy* and *Broder* and the New York Court of Appeals' decision in *Varela*, *Riordan* has never been overruled.

In sum, because plaintiff's § 349 claim merely "happens to overlap" with provisions of the New York Insurance Law, it is not an

improper attempt to circumvent the lack of private right of action under Insurance Law § 2601 and § 2610.

### c. Consumer-Oriented Conduct

Allstate also argues that Mid Island has not provided evidence "consumer-oriented conduct" sufficient to survive summary judgment. The Court disagrees.

As noted above, this Court held in denying Allstate's partial motion to dismiss that Mid Island had stated a plausible claim that the challenged practices were "consumer-oriented." Specifically, the Court explained that "[w]here, as here, a defendant enters into contractual relationship[s] with customers nationwide via a standard form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior affects the public generally and therefore satisfies the requirement of 'consumer-oriented' conduct within the meaning of Section 349." 2007 WL 2288046, at *4 (quotation omitted).

Following discovery, plaintiff produced evidence to support its claim. For example, an Allstate adjuster, John Pluchino, testified in a case in New York State court that Allstate had a policy of totaling cars at Mid Island even though the damage to those cars fell short of the 75 percent threshold. (Jesberger Decl. Ex. BB at 11:7-18.) Additionally, Mid Island has produced declarations from customers who assert that Allstate attempted to convince them to have their cars repaired at shops other than Mid Island. These customers assert, *inter alia*, that Allstate stated that Mid Island's prices were "ridiculous,"[15] stated that Allstate

had a "big problem" with Mid Island;[16] stated that Allstate could not give into "extortion" by Mid Island;[17] stated that Mid Island was a "bad facility that was engaged in price gouging and illegal activities,"[18] and made unsolicited suggestions regarding other auto repair shops.[19]

At oral argument, counsel for Allstate argued that this evidence fails as a matter of law to establish that Allstate's conduct was consumer oriented. Specifically, counsel asserted that the evidence demonstrated only a dozen or so cases where Allstate agents had allegedly engaged in deceptive conduct.

This argument, however, misapprehends what the consumer-oriented element requires. There is no "magic number" of consumers who must be deceived before conduct can become "consumer oriented." As the New York Court of Appeals has stated, "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior. [Section 349] itself does not require recurring conduct." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Instead, the critical question is whether "the acts or practices have a broad[ ] impact on consumers at large." *See id.*

Here, construing the evidence most favorably to Mid Island, a rational trier of fact could find that Allstate had a practice of dissuading or preventing consumers from

---

[15] (Welch Aff.)

[16] (Ercolano Aff. ¶¶ 5-6.)

[17] (Marquez Aff. ¶ 5.)

[18] (Rouse Aff. ¶ 6)

[19] (Assaf Aff. ¶¶ 6-7; Ayres Aff. ¶ 5; Cracolici Aff. ¶¶ 5-6.)

using Mid Island and that this practice had a broad impact on consumers at large, *i.e.*, any Allstate customer who brought his car to Mid Island. *Cf. Ng v. HSBC Mortg. Corp.*, No. 07-cv-5434 (RRM) (VVP), 2010 WL 889256, at *15 (E.D.N.Y. Mar. 10, 2010) (denying defendant judgment on the pleadings on § 349 claim because although "the deceptive practices were aimed at [plaintiff] in this particular instance, nothing suggests that similarly vulnerable consumers could not fall victim to similar practices, and there is nothing especially unique or unusual about this transaction"). As such, Mid Island has produced sufficient evidence to survive summary judgment on the consumer-oriented element of its § 349 claim.

### d. Materially Deceptive Practices

Additionally, there are triable issues of fact as to whether Allstate engaged in materially misleading or deceptive practices. As this Court explained in its opinion denying Allstate's motion to dismiss, "where an insurer engages in a scheme 'to force . . . insureds into using Allstate-affiliated contractors by means of misrepresentations, threats, and various retaliatory measures,' such behavior is 'indicative of the deceptive practices that General Business Law § 349 was designed to prevent.'" *M.V.B. Collision*, 2007 WL 2288046, at *5 (quoting *Scavo v. Allstate Ins. Co.*, 657 N.Y.S.2d 193, 194-95 (App. Div. 1997)). Here, as discussed above, it is undisputed that, in some instances, Allstate adjusters "totaled" cars and attempted to "steer" cars away from Mid Island. Mid Island has also produced declarations from customers who assert that Allstate representatives stated that Mid Island, *inter*

*alia*, engaged in "price gouging"[20] and "extortion."[21] Furthermore, Robert Jesburger testified that he heard an Allstate adjuster tell insureds that Mid Island was "overcharging," that its work was "inferior," and that the insureds would "wind up in civil remedies if they took their car to Mid Island Collision." (Jesberger Dep. 434:12-16.) In short, there are triable issues of fact as to whether Allstate engaged in a materially misleading and deceptive scheme to pressure insureds into not using Mid Island.

### IV. MOTION TO AMEND

Mid Island has also moved to amend its complaint to add a defamation claim and a claim for prima facie tort. Under Rule 15(a), leave to amend "shall be freely granted when justice so requires." Motions for leave to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005). Additionally, as discussed below, some of the

---

[20] (Rouse Aff. ¶ 6.)

[21] (Marquez Aff. ¶ 5.) Allstate also argues that many of the customers referenced by Mid Island nevertheless still had their cars repaired there. That may be true. However, it is well settled that a plaintiff need not prove reliance on a deceptive statement to succeed on a § 349 claim. *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 214 (App. Div. 2010) ("Intent to defraud and justifiable reliance by the plaintiff are not elements of [a § 349] claim.'" (quoting *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999)); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A] private action brought under § 349 does not require proof of actual reliance.").

allegations in the proposed amended complaint may have occurred after the filing of the initial complaint in this action. As such, they are more properly considered as a "motion to supplement" under Federal Rule of Civil Procedure 15(d). The same standard, however, applies to both motions to amend and motions to supplement. *See, e.g.*, *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 383 n.1 (D. Conn. 2008) ("[T]he standards for permitting additional pleading under Rule 15(a) and Rule 15(d) are the same.").

## A. Defamation Claims

The proposed amended complaint alleges the following incidents of defamation:

- "[I]n or around May 2005, a new Mid Island client, Hope DiFazio informed Jesberger that she had been told by Allstate that she would be 'involved in litigation' if her car was repaired there." (PAC ¶ 39.)

- "In or around, September 2005, a long-time Mid Island client, Annette Ercolano informed Jesberger that Allstate pressured her not to bring her car to Mid Island because Mid Island was 'overpriced' and 'did not do good work.'" (PAC ¶ 40.)

- "In April 2006, Christopher Bailey . . . , a Mid Island customer, spoke with Vincent Veshetta . . . of Allstate regarding his car's repair. Veshetta attempted to dissuade Bailey from using Mid Island to repair his car by claiming that Mid Island overcharges on labor rate and that Allstate has had problems with Mid Island with the quality of its work in the past." (PAC

¶ 41.)[22]

- "On multiple occasions between 2003 and 2007, Allstate employee John DiGiose made knowingly, recklessly[,] and/or negligently false statements to customers of Mid Island, including but not limited to Dorothy Groh-Tompsett, indicating that Mid Island overcharges its customers and performs unnecessary work on its customers vehicles." (PAC ¶ 58.)

- "On multiple occasions between 2003 and 2007, Allstate employee John DiGiose made knowingly, recklessly[,] and/or negligently false statements to customers of Mid Island, including but not limited to Karyn Marquez, indicating that Mid Island was engaging inactions [sic] that amounted to extortion." (PAC ¶ 59.)

- "On multiple occasions between 2003 and 2007, Allstate employee Norman Wong made knowingly, recklessly[,] and/or negligently false statements to customers of Mid Island, including but not limited to Janet Rouse, that Mid Island is 'a bad facility' that is 'engaged in price gouging and illegal activities.'" (PAC ¶ 60.)

Only the third allegation is not either (1) clearly time barred or (2) inadequately pled. The first two allegations, which occurred in 2005, are time barred. A one-year statute of limitations applies to defamation claims

_____

[22] Mid Island does not explicitly categorize the statements in PAC ¶¶ 39-41 as defamation claims, but the Court will construe them as such for purposes of the motion to amend.

brought under New York law. *See, e.g.*, *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir. 2009) ("Under New York law, the statute of limitations for a defamation claim is one year." (citing N.Y. C.P.L.R. § 215.3))). The original complaint in this case was filed on January 12, 2007. Therefore, even if the allegations in the proposed amended complaint "relate back" to the date of the original complaint, events occurring in 2005 are beyond the one-year statute of limitations. Thus, amending the complaint to include these allegations would be futile.

Second, the last three allegations, dealing with statements made "[o]n multiple occasions between 2003 and 2007," are not pled with sufficient specificity. Even under the liberal pleading standards of Federal Rule of Civil Procedure 8, a complaint alleging defamation must give the defendant "'sufficient notice of the communications complained of to enable him to defend himself.'" *Ford v. Clement*, 834 F. Supp. 72, 78 (S.D.N.Y. 1993) (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)). Under this standard, "a pleading is sufficient only if it 'adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated.'" *Amar v. Hillcrest Jewish Ctr.*, No. 05-CV-03290 (RRM) (RML), 2009 WL 891795, at *7 (E.D.N.Y. Mar. 31, 2009) (quoting *Camp Summit of Summitville, Inc. v. Visinski*, No. 06 Civ. 4994, 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007)). Here, the last three allegations do not adequately explain when the purported communications were made. As such, Allstate is deprived of an opportunity to defend itself because it is left to guess whether, for example, the statue of limitations may bar the alleged statements.

Accordingly, the Court denies to motion to amend/supplement with respect to these allegations. However, this denial is without prejudice, and plaintiff may submit a more specific complaint under the schedule set forth below by the Court.[23]

## B. Prima Facie Tort

Mid Island also seeks to amend to add a claim for prima facie tort. Under New York law, "'[t]he elements of prima facie tort are (1) the intentional infliction of emotional harm, (2) which results in special damages, (3) without any excuse or justification, (4) by act or series of acts that would otherwise be lawful.'" *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 277 (E.D.N.Y. 2009) (quoting *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 465 (E.D.N.Y. 2002)).

Mid Island alleges that "[a]ll of the actions taken by Allstate against Mid Island that have been heretofore described have been taken with the express purpose of inflicting harm upon Mid Island," (PAC ¶ 66) and "[n]one of the actions taken by Allstate against Mid Island that have been heretofore described have been made with any reasonable business purpose, excuse[,] or justification.'" (PAC ¶ 67.)

Prima facie tort is not, however, an available remedy when the complaint states colorable allegations for other, more traditional tort claims. *Siotkas v. LabOne, Inc.*, 594 F. Supp. 2d 259, 276 (E.D.N.Y.

---

[23] At oral argument, plaintiff's counsel indicated that plaintiff would be willing to provide more specificity for these allegations to address these issues.

2009) ("Because, as discussed above, the facts alleged in plaintiffs' complaints give rise to traditional common-law tort claims, plaintiffs' causes of action for intentional and prima facie tort should be dismissed."); *Silver v. Kuehbeck*, No. 05 Civ. 35 (RPP), 2005 WL 2990642, at *14 (S.D.N.Y. May 7, 2005) ("[Plaintiff's] prima facie tort claim must be dismissed because it alleges no facts not included in his other claims for relief, and it completely overlaps the other claims alleged in the Complaint. To the extent that allegations provide grounds for other causes of action included in the Complaint, those allegations cannot give rise to a prima facie tort claim."); *Tasso v. Platinum Guild Int'l*, No. 94 CIV. 8288 (LAP), 1997 WL 16066, at *5 (S.D.N.Y. Jan. 16, 1997) ("Because plaintiff has succeeded in stating claims for defamation and intentional interference, her prima facie tort claim must fail."). Here, as noted above, plaintiff's tortious interference with business relations claim has survived summary judgment. The allegations in plaintiff's prima facie tort claim appear to overlap completely with the tortious interference claim. As such, amending the complaint to add a prima facie tort claim would be futile.[24]

Furthermore, even if the prima facie tort claim did not overlap with the tortious interference claim, it would be subject to dismissal because plaintiff does not allege special damages. *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 478-79 (E.D.N.Y. 2009) ("'Special damages' is defined as a 'specific and measurable loss,' . . . and must be alleged

with sufficient particularity to identify actual [losses] and be related causally to the alleged tortious acts." (internal citations and quotations omitted)); *Leather Dev. Corp. v. Dun & Bradstreet, Inc.*, 224 N.Y.S.2d 513, 514 (App. Div. 1962) (dismissing prima facie tort claim where "[t]he allegations of the amended complaint are ones of general damages, and not of special damages, asking the round sum of $500,000 on behalf of the corporate plaintiff and $1,000,000 for the individual plaintiff. . . . . [D]amages pleaded in such round sums, without any attempt at itemization, must be deemed allegations of general damages."); *see also John & Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162, 174 (N.D.N.Y. 2001) ("Given that the purpose of the special damages pleading requirement is to put Plaintiff on notice as to the exact losses claimed, it is axiomatic that Plaintiff's failure to trace its alleged losses to specific contracts renders its prima facie tort claim invalid."). Here, the amended complaint does not itemize—or even quantify—Mid Island's alleged damages. *Cf. Fordham*, 662 F. Supp. 2d at 277 (explaining that "special damages must be alleged with sufficient particularity to identify actual losses and round sums without any attempt at itemization are insufficient" and dismissing prima facie tort claim (quotation omitted)). Because plaintiff has not alleged special damages, the prima facie tort claim would also be subject to dismissal on that ground. As such, any amendment would be futile.

In sum, the Court denies the motion to amend. However, the denial is without prejudice to plaintiff on the defamation claims, and plaintiff may, within ten days of this Memorandum and Order, re-file a proposed amended complaint pleading its non-time barred defamation claims with

---

[24] At oral argument, plaintiff's counsel was unable to articulate any allegations of misconduct that, if proven, would fall outside the realm of tortious interference with business relations.

greater specificity.[25]

## V. ALLSTATE'S MOTION TO STRIKE MID ISLAND'S EXPERT REPORT AND MID ISLAND'S MOTION TO AMEND ITS EXPERT REPORT

Allstate seeks to strike the report of Mid Island's damages expert, Dr. Frederic Jennings. At oral argument, Allstate's counsel acknowledged that the Jennings Report related solely to damages and, therefore, that the Court did not need to decide on its admissibility in order to rule on the summary judgment motion. Thus, the Court will reserve decision on this motion and make a determination following a pre-trial *Daubert* hearing.

Mid Island also seeks to amend the Jennings Report and to introduce "an extensive list" of procedures that Allstate failed to pay for but that were necessary "to [bring] a vehicle to its pre-accident condition." (Docket Entry 77, Letter from Christopher R. Invidiata to Hon. Joseph F. Bianco, Feb. 9, 2010.) It is undisputed that neither the amended Jennings Report nor the list of unpaid procedures was produced during discovery. Allstate argues that, irrespective of questions of admissibility, the Court should preclude use of the amended report and the list

because Mid Island failed to produce these materials during discovery.

To preclude the materials, the Court would need to determine (1) whether Mid Island in fact failed to make a timely disclosure; (2) whether this failure was without substantial justification or excuse;[26] (3) whether sanctions are warranted; and (4) whether preclusion is the appropriate sanction. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (explaining that preclusion is not automatically required even when there has been an unjustified and unexcused late disclosure and that Rule 37(c)'s plain text allows the Court to consider alternative sanctions instead of preclusion).

For reasons of judicial economy, the Court will address these questions at the same time that the Court addresses, after a *Daubert* hearing, whether Dr. Jennings's report(s) are admissible under the Federal Rules of Evidence. Thus, the Court reserves decision on the motions related to the amended expert report and the unpaid procedures list. The Court will decide whether these materials can be used at trial at the same time it decides defendant's *Daubert* motion and any other pre-trial motions *in limine*.

## VI. CONCLUSION

For the reasons set forth above, the Court (1) denies Allstate's motion for summary judgment in its entirety; (2) denies Allstate's motion to strike Mid Island's Local Rule 56.1 counterstatement of material facts and other materials submitted in opposition to summary judgment; (3) denies the motion to amend to the extent it seeks to add a claim for prima

---

[25] Because the Court denies the motion to amend on other grounds, it does not address at this juncture defendant's arguments that the statements, including the alleged April 2006 statement by "Vincent Vischetta," are non-actionable statements of opinion or whether a qualified privilege would apply to the statements. Should plaintiff submit a revised amended complaint, the Court will provide defendant an opportunity to renew any argument as to why the proposed amendment should be denied.

[26] *See* Fed. R. Civ. P. 37(c).

facie tort; (4) denies the motion to amend to add defamation claims, without prejudice to Mid Island submitting a new proposed amended complaint within ten days of this Memorandum and Order containing greater specificity as to such claims, and (5) reserves decision on Allstate's motion to strike Mid Island's expert report and Mid Island's motion to serve an amended expert report and the list of unpaid procedures.   The parties shall participate in a telephone conference on Tuesday, August 10, 2010 at 10:00 a.m. for the purpose of, among other things, setting a schedule for submission of a joint pre-trial order.  Counsel for Allstate shall initiate the call and, once all parties are on the line, contact Chambers at (631) 712-5670.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 27, 2010
Central Islip, New York

* * *

The attorneys for the plaintiff are Steven F. Goldstein, Christopher R. Invidiata, and Donald Pupke, Steven F. Goldstein, LLP, One Old Country Road, Carle Place, New York 11514.  The attorneys for the defendant are Andrew T. Hahn, Sr., Esq., and James S. Yu, Esq., Seyfarth Shaw LLP, 620 Eighth Avenue, New York, NY 10018.